## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM DOUGLAS FULGHUM, et al.,  )
                                  )
        **Plaintiffs,**        )
**v.**                                 )      **CIVIL ACTION**
                                  )      **No. 07-2602-KHV**
**EMBARQ CORPORATION, et al.,**  )
                                  )
        **Defendants.**      )
_____)

## MEMORANDUM AND ORDER

Plaintiffs assert putative class action claims against Embarq Corporation, Sprint Nextel Corporation and Randall T. Parker for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., the Ohio Civil Rights Act, Ohio Rev. Code § 4112.01 et seq., the Oregon Unlawful Discrimination Law, O.R.S. § 659A.001 et seq., and the Tennessee Human Rights Act, Tenn. Stat. § 4-21-101 et seq.[1] This matter comes before the Court on Defendants' Motion To Dismiss The First, Third, Fourth, Fifth, Sixth And Seventh Claims For Relief In Plaintiffs' Amended Complaint ("Defendants' Motion To Dismiss") (Doc. #17) filed April 30, 2008.[2] For reasons stated below, the Court sustains defendants' motion in part.

---

[1]      Plaintiffs also sue various predecessor and/or subsidiary companies of Embarq and Sprint and their benefit plans, plan administrators and/or plan sponsors. All defendants join in the motion to dismiss.

[2]      Defendants' motion to dismiss (Doc. #17) addresses the amended complaint which plaintiffs filed March 31, 2008 (Doc. #14). On September 29, 2008, plaintiffs filed a second amended complaint (Doc. #42) which adds an individual age discrimination plaintiff under the fourth cause of action. Pursuant to the parties' stipulation, the Court has ordered that defendant's motion to dismiss (Doc. #17) applies fully to the second amended complaint (Doc. #42) and that no further briefing shall be required or permitted. See Stipulation And Order (Doc. #43) filed October
(continued...)

## I.      Legal Standards

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded facts in the complaint and views them in a light most favorable to plaintiffs.  See Zinermon v. Burch, 494 U.S. 113, 118 (1990); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiffs' entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  See Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007).  In other words, plaintiffs must allege facts sufficient to state a claim which is facially plausible – rather than merely conceivable.  See id.  The Court makes all reasonable inferences in favor of plaintiffs.  See Zinermon, 494 U.S. at 118; see also Rule 8(a), Fed. R. Civ. P.; Lafoy v. HMO Colo., 988 F.2d 97, 98 (10th Cir. 1993).  The Court, however, need not accept as true those allegations which state only legal conclusions.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  In reviewing the sufficiency of plaintiffs' complaint, the issue is not whether plaintiffs will prevail but whether they are entitled to offer evidence to support their claims.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements which they must prove.  See Hall, 935 F.2d at 1110.

## II.     Facts

---

[2](...continued)
23, 2008 ¶1.  This order evaluates and discusses the motion to dismiss (Doc. #17) with regard to the amended complaint (Doc. #14).  The ruling, however, applies equally to the second amended complaint (Doc. #42).

Plaintiffs allege the following facts, which the Court accepts as true for purposes of this order:

Sprint is a Kansas corporation with its principal places of business in Overland Park, Kansas and Reston, Virginia. <u>Amended Complaint</u> (Doc. #14) filed March 31, 2008 ¶ 36. Sprint was formerly known as United Utilities, Incorporated, United Telecommunications, Inc. and Sprint Corporation. <u>Id.</u>

On May 17, 2006, Sprint created Embarq as a spinoff of its local telecommunications carriers. <u>Id.</u> ¶ 27. Embarq is a Delaware corporation with its principal place of business in Overland Park, Kansas. <u>Id.</u> Embarq is the fourth largest local exchange telephone carrier in the United States. <u>Id.</u> Embarq has approximately 20,000 active employees and 14,000 retirees. <u>Id.</u> Embarq is publicly traded on the New York Stock Exchange and earns more than $6 billion in annual revenues. <u>Id.</u>

Parker, a Kansas resident, serves as plan administrator for many of the employee benefit plans at issue in this lawsuit. <u>Id.</u> ¶ 49.

Plaintiffs retired from employment with national, regional and local telecommunications companies which are now wholly-owned subsidiaries of Embarq.[3] <u>Id.</u> ¶ 2. They previously participated in Sprint retiree benefit plans. In connection with the Embarq spin-off, Sprint purported to assign and transfer to Embarq many of the assets and obligations of its benefit plans. Plaintiffs, however, did not consent to the transfer. <u>Id.</u> ¶¶ 28, 39. In event of default by Embarq, Sprint

---

[3]    The named plaintiffs are 15 individuals who retired between 1985 and 2003. <u>See id.</u> ¶¶ 9-23. Plaintiffs worked for various predecessors of Embarq, including Carolina Telephone and Telegraph Company, United Telecom of Florida, Sprint of Florida, Florida Telephone Company, North Supply Company, United Telephone Company of Ohio, United Telephone Company of the Northwest and United Inter-Mountain Telephone Company.

3

remains liable for benefit obligations to plaintiffs.  Id. ¶¶ 28, 39.

Plaintiffs' employers attracted and retained them with retiree benefit programs which included the medical, prescription drug and life insurance benefits which are at issue in this lawsuit. Id. ¶ 64.  Throughout their careers, plaintiffs accepted lower levels of compensation because they understood that they were also earning a valuable program of retiree benefits which would make their post-retirement years financially secure.  Id.

Since 1973, defendants have exploited and publicized prospective changes in retiree benefits, including the changes which are at issue in this lawsuit, to encourage senior employees to retire early.  See Amended Complaint (Doc. #14) ¶¶ 74-75.  Defendants informed plaintiffs that by accepting early retirement, they would retain vested medical and life insurance benefits and avoid upcoming benefit changes.  See id.  These representations served as powerful motivators for employees who accepted early retirement.  See id.

From 1977 to 2007, defendants repeatedly misrepresented retirement benefits to plaintiffs. See id. ¶ 78.  Such representations induced plaintiffs to understand that throughout retirement, i.e. for life, they would receive subsidized and paid medical and prescription drug benefits.  See id. ¶ 78.  During this time, defendants repeatedly represented, both orally and in writing, that throughout retirement, i.e. until they died, plaintiffs would receive certain life insurance and death benefits at no cost.  See id. ¶ 81.[4]

---

[4]    For example, on February 23, 1987, William T. Esrey, President and Chief Executive Officer of United Telecommunications Inc., announced new incentives which allowed certain employees to retire early and obtain greater pension benefits.  See id. ¶ 82.  At the time, defendants represented that those employees who selected early retirement would receive paid and subsidized medical, prescription drug and life insurance benefits throughout retirement, i.e. for life.  See id. ¶ 83.

With regard to employees who retired in 1990, defendants provided handouts which represented or strongly implied that throughout retirement, i.e. until death, they would receive company-subsidized medical and prescription drug benefits and grandfathered life insurance benefits. See id. ¶ 87.

With regard to employees who retired after January 1, 1991, defendants represented that they would receive healthcare benefits under a flexcare (cafeteria) plan which allowed credits toward premiums for years of service and a choice of indemnity health insurance plans. See id. ¶ 88. Defendants did not reserve or clearly communicate that they retained the right to reduce or terminate these subsidized health and prescription drug benefits. See id. ¶ 88. Despite adoption of the flexcare plan, defendants specifically and repeatedly represented or strongly implied to longtime CT&T employees that post-retirement, i.e. for life, they would receive grandfathered life insurance at no cost. See id. ¶ 89.

Between December of 2001 and November of 2005, defendants systematically misrepresented retiree benefits to lead plaintiffs to believe that they had a right to paid and subsidized medical, prescription drug and life insurance benefits. See id. ¶ 98. Defendants concealed the fact that they believed that they retained ability to reduce or terminate the benefits at any time. See id. ¶ 98. Said representations were material and induced plaintiffs make important retirement and other financial decisions based on an understanding that they would receive those benefits for life. See id. ¶ 99.

In November of 2005, before the Embarq spin-off, Sprint informed plaintiffs that effective January 1, 2006, it was terminating company-paid prescription drug benefits for those retirees and dependents who were eligible for Medicare. Id. ¶¶ 29, 100. Sprint thereafter replaced the retiree

prescription drug program with an inferior program which provides a monthly allowance of $41.67 ($500.00 per year) to each Medicare-eligible retiree and dependent to assist them in securing their own prescription drug coverage under Medicare Part D. Id.

On July 26, 2007, after the spin-off, Embarq informed plaintiffs that effective September 1, 2007 and January 1, 2008, it was unilaterally terminating or reducing certain company-paid medical, prescription drug and life insurance benefits and/or subsidies. Id. ¶ 30. Specifically, Embarq announced that it was eliminating medical benefits and subsidies for drug benefits for Medicare-eligible retirees. Id. ¶ 101. Embarq also announced that it was eliminating the grandfathered life insurance benefit and all other life insurance benefits for retirees in the VEBA plan, and that it was reducing the maximum level of other life insurance benefits to $10,000.[5] Id. ¶ 102.

On the same date, Embarq reported to shareholders that its termination of retiree benefits would (1) during the second half of 2007, reduce post-retirement benefit expenses by $20 million; (2) beginning in 2008, result in annual cash savings of approximately $40 million per year; and (3) reduce long-term retirement benefit obligations by $301 million. Id. ¶ 31.

With regard to benefits at issue in this lawsuit, Sprint, Embarq and Parker are plan administrators and/or plan sponsors within the meaning of ERISA Section 3(16), 29 U.S.C. § 1002(16)(a) & (b), and fiduciaries within the meaning of ERISA Section 3(21), 29 U.S.C. § 1002(21). Sprint, Embarq and Parker exercised discretionary authority or control over the plans and disposition of plan assets and have discretionary authority or responsibility in administering the

---

[5] The record is unclear what VEBA stands for. According to the amended complaint, in 1964, CT&T created VEBA, a pre-funded plan, to provide disability and death benefits to current employees and death benefits to retirees. Id. ¶ 66. In 1971, CT&T allegedly established a new welfare plan which created a so-called grandfathered life insurance benefit in addition to the VEBA death benefit. Id. ¶¶ 68-70.

plans. Id. ¶¶ 32, 37, 49.  With regard to said plans, employees and agents of Sprint and Embarq (including Parker acting in a fiduciary capacity) explained retiree benefits and made numerous representations to plaintiffs regarding their lifetime rights to receive post-retirement benefits.  Id. ¶¶ 33, 40.

### III.    Plaintiffs' Claims

Plaintiffs proceed on behalf of themselves and the following class:

> All persons, including all plan participants and all eligible spouse and dependent plan beneficiaries, whose rights to medical, prescription drug, and/or life insurance benefits or premium subsidies have been adversely affected by the terminations, reductions and changes in retiree benefits which were announced (1) by Defendant Sprint Nextel Corporation in or about November 2005, and (2) by Defendant Embarq Corporation on July 26, 2007.

Amended Complaint (Doc. #14) ¶ 50.[6]

In Count I, plaintiffs allege that their retiree benefit plans gave them a vested right to company-sponsored and company-paid medical, prescription drug and life insurance benefits.  See Amended Complaint (Doc. #14) ¶ 107.    Under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), plaintiffs seek restoration of such benefits.  Specifically, plaintiffs seek the following relief: (1) an order declaring that certain benefits are vested and permanent; (2) an order reforming the plans to remove all amendments which have purported to reduce or terminate such benefits; and (3) an order requiring defendants to pay improperly withheld benefits.  See id. ¶ 109.

In Count II, plaintiffs allege that defendants breached fiduciary duties under ERISA by (1) failing to provide clear and accurate plan summaries and (2) misinforming, misleading and misrepresenting benefits to plan participants.    Under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).  Plaintiffs seek equitable relief in the form of (1) an order enjoining defendants to

---

[6]        Plaintiffs also assert several sub-classes which are not relevant here.  See id.

reinstate, restore and provide benefits; (2) an accounting of all profits and savings which defendants realized from alleged breaches of fiduciary duties; (3) disgorgement of such profits; and (4) monetary relief to make plaintiffs whole for losses caused by alleged breaches of fiduciary duties. See id. ¶¶ 120-21.

In Count III, plaintiffs seek declaratory relief under ERISA Sections 502(a)(1)(B) and 502(a)(3) and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. Plaintiffs allege an actual controversy whether defendants can terminate or reduce company-paid medical, prescription drug and life insurance benefits. See id. ¶ 125. Plaintiffs seek declaratory judgment that they are entitled to reinstatement of such benefits in the form which they received at the time of retirement. See id. ¶ 126.

In Counts IV, V, VI and VII, plaintiffs claim that defendants violated the ADEA and Ohio, Oregon and Tennessee age discrimination laws. Specifically, plaintiffs allege that by terminating or reducing their life, medical and prescription drug benefits, defendants violated federal and state statutory prohibitions against intentional and disparate impact age discrimination. See id. ¶¶ 128, 131, 143, 151, 158, 165. Plaintiffs seek reinstatement of benefits and/or damages for unlawful termination of benefits, including liquidated damages for willful discrimination. See id. ¶¶ 144-45, 153, 160, 166.

**IV.     Analysis**

Defendants seek to dismiss all claims except Count II (breach of fiduciary of duty). With respect to Count I (plaintiffs' claim for restoration of benefits under Section 502(a)(1)(B)), defendants assert that the claim must fail as a matter of law because plaintiffs do not have a vested right to benefits. As to Count III (plaintiffs' claim for declaratory relief), defendants assert that

plaintiffs cannot seek simultaneous relief under ERISA Sections 502(a)(1)(B) and 502(a)(3) and that the Court should decline to exercise jurisdiction under the DJA. Regarding Count IV (plaintiffs' ADEA claim), defendants assert that plaintiffs fail to state a claim because federal law expressly permits their action. Finally, as to Counts V through VII (plaintiffs' state law age discrimination claims), defendants contend that ERISA preempts state age discrimination statutes.

### A.    Restoration Of Benefits (Count I)

In Count I, plaintiffs seek restoration of medical, prescription drug and life insurance benefits under Section 502(a)(1)(B) of ERISA .[7] Defendants assert that plaintiffs' claim must fail as a matter of law because (1) plaintiffs do not allege clear and express plan language which demonstrates an intent to vest benefits; and (2) plan documents contain unambiguous clauses which reserve to defendants the right to amend or terminate benefits at will.

ERISA distinguishes two types of employment benefits: welfare benefits and pension benefits. 29 U.S.C. § 1002(1),(2). The benefits at issue here – medical, prescription drug and life insurance – are welfare benefits. See 29 U.S.C. § 1002(1). Unlike pension plans, ERISA does not establish minimum participation, vesting or funding requirements for welfare benefit plans.[8]

---

[7]     ERISA Section 502(a)(1)(B) provides as follows:

(a) Persons empowered to bring a civil action
A civil action may be brought–
       (1) by a participant or beneficiary–
                          * * *
              (B) to recover benefits due to him under the terms of his plan, to
              enforce his rights under the terms of the plan, or to clarify his rights
              to future benefits under the terms of the plan[.]

29 U.S.C. § 1132(a)(1)(B).

[8]     In exempting welfare benefit plans from ERISA vesting requirements, Congress
(continued...)

Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). Thus, unless an employer or other plan sponsor contractually agrees to grant vested benefits, it is generally free to adopt, modify or terminate welfare benefit plans at any time for any reason. See id.; Chiles v. Ceridian Corp., 95 F.3d 1505, 1510 (10th Cir. 1996).

An employer or plan sponsor who changes vested benefits may be liable to beneficiaries under the plan. 29 U.S.C. § 1132(a)(1),(3); Chiles, 95 F.3d at 1510. Because welfare benefits do not statutorily vest under ERISA, plaintiffs bear the burden to show an agreement or other demonstration of employer intent to vest company-paid welfare benefits. See id. at 1511. A promise to provide vested benefits must be stated in "clear and express language" and be incorporated into the formal written ERISA plan in some fashion. Id. at 1511, 1513 (quotations and citations omitted). In interpreting the terms of an ERISA plan, the Court applies general rules of contract construction and interprets the plan like any contract, i.e. by examining its language and determining the parties' intent. See Deboard v. Sunshine Mining & Ref. Co., 208 F.3d 1228, 1240 (10th Cir. 2000) (quoting Capital Cities/ABC, Inc. v. Ratcliff, 141 F.3d 1405, 1411 (10th Cir. 1998)). The Court examines the plan documents as a whole, giving language "its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." Blair v. Metro. Life Ins. Co., 974 F.2d 1219, 1221 (10th Cir. 1992). If the plan documents are unambiguous, the Court construes them as a matter of law. See Chiles, 95 F.3d at 1511. If the Court determines that plan language is

---

[8](...continued)
determined that "[t]o require the vesting of those ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income." Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1160 (3d Cir.1990) (citing H.R. Rep. No. 807, 93rd Cong., 2d Sess. 60).

ambiguous, it may consider extrinsic evidence.  See Deboard, 208 F.3d at 1240.  Ambiguity exists

when a contract provision is "reasonably susceptible to more than one meaning, or where there is

uncertainty as to the meaning of a term."  Pirkhem v. First Unum Life Ins., 229 F.3d 1008, 1010

(10th Cir. 2000).

In addition, the Court must view the relative clarity of plan documents against special

obligations which attach in the ERISA context.  Haymond v. Eighth Dist. Elec. Benefit Fund, 36

Fed. Appx. 369, 372-373, 2002 WL 1056976, at *3 (10th Cir. 2002).  ERISA requires an employer

to provide a summary plan description ("SPD") which is "written in a manner clearly calculated to

be understood by the average plan participant, and shall be sufficiently accurate and comprehensive

to reasonably apprise such participants and beneficiaries of their rights and obligations under the

plan."  29 U.S.C. § 1022(a).  The SPD must include information regarding "circumstances which

may result in disqualification, ineligibility, or denial or loss of benefits."  29 U.S.C. § 1022(b).  An

SPD is considered part of the plan documents.  See Chiles, 95 F.3d at 1515.  Because the SPD best

reflects the expectations of the parties, the terms of the SPD control the terms of the plan.  See id.

### 1.    Whether Plaintiffs Sufficiently Allege An Intent To Vest Benefits

Defendants assert that as a matter of law, plaintiffs must allege clear and express plan

language which demonstrates an intent to vest welfare plan benefits.  Defendants assert that

plaintiffs make only conclusory allegations of vested benefits and do not identify any plan language

which provides for such vesting.  See Defendants' Memorandum In Support Of Motion To Dismiss

The First, Third, Fourth, Fifth, Sixth And Seventh Claims For Relief In Plaintiff's Amended

Complaint ("Defendants' Memorandum") (Doc. #18) filed April 30, 2008 at 11-12.  According to

defendants, the complaint must identify specific plan language which demonstrates an intent to vest

welfare benefits.  See id.

In support of their argument, defendants rely primarily on Chiles v. Ceridian Corp., 95 F.3d 1505, 1510 (10th Cir. 1996).  In that case, the Tenth Circuit found that a promise to provide vested benefits must be incorporated in some fashion into formal written ERISA plan documents and that contractual vesting of welfare benefits must be stated in clear and express language.  See id. at 1511, 1513.  Chiles, however, involved a Rule 56 summary judgment ruling, not a Rule 12(b)(6) motion to dismiss for failure to state a claim.  Chiles did not articulate pleading requirements for a restoration-of-benefits claim under 29 U.S.C. § 1132(a)(1)(B).

Under notice pleading requirements, plaintiffs must provide "a short and plain statement of the claim showing that [they are] entitled to relief," Fed. R. Civ. P. 8(a)(2), to give defendants fair notice of their claim and the grounds upon which it rests.  Conley v. Gibson, 355 U.S. 41, 47 (1957).  Under this standard, plaintiffs must allege facts sufficient to state a claim which is facially plausible – rather than merely conceivable.  See Twombly, 127 S. Ct. at 1964-65.  Although the complaint must set forth the grounds of plaintiffs' claim for relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action, it need not set out in detail the facts upon which plaintiffs base their claim.  See id.

Here, plaintiffs allege that (1) defendants informed plaintiffs that by accepting early retirement, they would retain vested medical and life insurance benefits, see Amended Complaint (Doc. #14) ¶ 75; (2) defendants represented that throughout retirement, i.e. for life, plaintiffs would receive company-subsidized and company-paid medical and prescription drug benefits; see id. ¶ 78; (3) defendants repeatedly represented, both orally and in writing, that throughout retirement, i.e. until death, plaintiffs would receive certain life insurance and death benefits at no cost; see id. ¶ 81;

12

(4) defendants represented that employees who elected early retirement would receive company-paid and company-subsidized medical, prescription drug and life insurance benefits throughout retirement, i.e. for life, see id. ¶ 83; (5) defendants provided handouts which represented or strongly implied that throughout retirement, i.e. until death, certain employees would receive company-subsidized medical and prescription drug benefits and grandfathered life insurance benefits, see id. ¶ 87; and (6) defendants represented that certain employees would receive healthcare benefits under a flexcare (cafeteria) plan without clearly communicating that they retained the right to reduce or terminate the subsidized health and prescription drug benefits, see id. ¶ 88.

In ruling on defendants' motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences from those facts in favor of plaintiffs.[9] See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006). Applying this standard, the Court cannot conclude as a matter of law that defendants' plan documents do not contain the alleged representations. Moreover, plaintiffs specifically allege that defendants made at least two representations in writing.[10] Even if the original plan documents did not contain these representations, the Tenth Circuit has found that subsequent writings can create a new employee benefit plan for purposes of ERISA. See

---

[9] Plaintiffs do not attach plan documents to the amended complaint or the second amended complaint. In support of their motion to dismiss, defendants attach excerpts from various plans. As discussed below, the Court does not consider the excerpts because the record is insufficiently developed to determine which plan documents may apply to which plaintiffs, or whether all applicable plan documents are before the Court.

[10] Plaintiffs allege that defendants (1) represented in writing that throughout retirement, i.e. until death, plaintiffs would receive certain life insurance and death benefits at no cost; and (2) provided handouts which represented that throughout retirement, i.e. until death, certain employees would receive company-subsidized medical and prescription drug benefits and grandfathered life insurance benefits. See Amended Complaint (Doc. #14) ¶¶ 81, 87.

<u>Deboard</u>, 208 F.3d at 1238-39.[11]  Finally, defendants' argument ignores the fact that the Court can consider extrinsic evidence to determine the parties' intent if it finds that the plan language is ambiguous.  <u>See, e.g.</u>, <u>id.</u> at 1240.  On this record, defendants have not shown that plaintiffs cannot prevail on their claim that they have a vested right to welfare benefits.

> **2.    Whether Reservation Of Rights Clauses Preclude Plaintiffs' Claims**

Defendants assert that as a matter of law, numerous reservation-of-rights clauses in plan and SPD documents gave them an unqualified right to terminate welfare benefits.  <u>See Defendants' Memorandum</u> (Doc. #18) at 12-15.  To support this argument, defendants present exhibits which contain excerpts from 17 benefit plans and SPDs.[12]  Each excerpt states in some fashion that the employer reserves the right to change or discontinue any or all benefits at any time. <u>See</u> <u>Defendants' Appendix</u> (Doc. #18-2), exhibits 1-17.

---

[11]    In <u>Deboard</u>, the Tenth Circuit found that an employer's letters which offered lifetime insurance benefits created a new ERISA plan for those persons who took early retirement.  Under existing plan documents, the employer retained the right to amend or terminate the plan at any time.  Based on uncontroverted summary judgment evidence, however, the Tenth Circuit found that the employer intended to create a new employee benefit plan for those persons who took advantage of the early retirement subsidy.  <u>See id.</u> at 1238.

[12]    Defendants present excerpts from the following plans: (1) United Telecom Retiree Medical Plan effective January 1, 1990; (2) Sprint Welfare Benefit Plan for Retirees and Non-FlexCare Participants effective December 31, 2001; (3) Embarq Retiree Medical Plan effective May 17, 2006; (4) United Telecom Retiree Medical Plan SPD effective January 1, 1991; (5) Sprint Retiree Medical Plan SPD effective January 1, 1997; (6) Sprint Retiree Medical Plan SPD effective January 1, 1998; (7) Sprint Retiree Benefits SPD effective January 1, 2000; (8) Sprint Retiree Benefits SPD effective January 1, 2001; (9) Sprint Retiree Benefits SPD effective January 1, 2002; (10) Sprint Retiree Benefits SPD effective January 1, 2005; (11) Sprint Retiree Benefits SPD effective January 1, 2004; (12) Sprint Retiree Benefits SPD effective January 1, 2005; (13) Sprint Retiree Medical Plan – Non Flex effective January 1, 2005; (14) Sprint Nextel Retiree Benefits SPD effective January 1, 2006; (15) Embarq Retiree Benefits SPD effective May 17, 2006; (16) Embarq Retiree Benefits SPD effective January 1, 2007; and (17) Embarq Retiree Benefits SPD effective January 1, 2008.  <u>See</u> <u>Appendix To Defendants' Memorandum In Support Of Their Motion To Dismiss The First, Third, Fourth, Fifth, Sixth, and Seventh Claims For Relief In Plaintiffs' Amended Complaint</u> ("<u>Defendants' Appendix</u>") (Doc. #18-2) filed April 30, 2008.

14

Plaintiffs respond that it is premature to present evidence.[13]  The Court agrees.  In ruling on a motion to dismiss, the court may consider documents referred to in the complaint if the documents are central to plaintiffs' claim and the parties do not dispute their authenticity.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  Here, the record is insufficiently developed to determine which plan documents may apply to which plaintiffs, or whether all applicable plan documents are before the Court.

Moreover, even if the Court considered the evidence, it is not necessarily dispositive of plaintiffs' claims.  Plaintiffs point to plan language which indicates that coverage will continue until the employee either dies or fails to pay his or her share of the cost.  This potentially conflicting language may render the plans ambiguous, in which case the Court can consider extrinsic evidence. See, e.g., Deboard, 208 F.3d at 1240-41.  Also, as noted, in Deboard, the Tenth Circuit found that an employer's written representations created a new ERISA plan for employees who took early retirement in reliance thereon.  See id. at 1238.  Here, plaintiffs claim that to induce them to retire early, defendants represented in writing that they would receive lifetime benefits.  In ruling on defendants' motion, the Court must accept plaintiffs' allegations as true and make all reasonable inferences in favor of plaintiffs.  See Zinermon, 494 U.S. at 118.  On this record, defendants have not shown as a matter of law that plaintiffs do not have a vested right to welfare benefits. Accordingly, the Court will not dismiss Count I, plaintiffs' claim for restoration of benefits under Section 502(a)(1)(B) of ERISA.

---

[13]    Plaintiffs present excerpts from the same documents which state generally that coverage ends when the employee either dies or does not pay his or her share of the cost of coverage. See Collected Exhibits To Plaintiffs' Memorandum In Opposition To Defendants' Motion To Dismiss The First, Third, Fourth, Fifth, Sixth and Seventh Claims For Relief In Plaintiffs' Amended Complaint ("Plaintiffs' Exhibits") (Doc. #21-4) filed May 30, 2008.

**B.      Declaratory Judgment (Count III)**

In Count III, plaintiffs seek declaratory relief under Sections 502(a)(1)(B) and 502(a)(3) of ERISA and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.[14]  Specifically, plaintiffs allege an actual controversy whether defendants may lawfully reduce or terminate their retirement benefits.  See Amended Complaint (Doc. #14) ¶ 125.  Plaintiffs seek declaratory judgment that they are entitled to restoration of benefits which they received at the time of retirement.  See id. ¶ 126. Defendants seek to dismiss the declaratory judgment claim on grounds that (1) to the extent the claim is based on Section 502(a)(1)(B), it fails for the reasons argued under Count I; (2) to the extent the claim is based on Section 502(a)(3), it fails because Section 502(a)(1)(B) provides an adequate remedy for the alleged injury; and (3) the Court should decline jurisdiction under the DJA.  The Court rejects the first argument for reasons stated above regarding Count I.

**1.      Simultaneous Claims Under Section 502(a)(1)(B) and Section 502(a)(3)**

As noted in its analysis of Count I, Section 502(a)(1)(B) of ERISA provides that a

---

[14]      ERISA Section 502(a) provides in part as follows:

(a) Persons empowered to bring a civil action
A civil action may be brought –
        (1) by a participant or beneficiary –
               * * *
               (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
               * * *
        (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
        * * *

29 U.S.C. § 1132(a).

16

plan participant or beneficiary may bring a civil action

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) of ERISA provides that a plan participant, beneficiary, or fiduciary may bring a civil action

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).  Defendants contend that as a matter of law, plaintiffs cannot seek relief under both sections and that plaintiff's claim under Section 502(a)(3) must fail because Section 502(a)(1)(B) provides an adequate remedy for the alleged injury.

In Varity Corporation v. Howe, 516 U.S. 489 (1996), the United States Supreme Court found that Section 502(a)(3) operates as a catch-all provision or safety net which provides appropriate equitable relief for ERISA injuries which Section 502 does not elsewhere adequately remedy.  See id. at 512.  In Varity, defendant transferred the benefit plans of its money-losing divisions to a financially insecure, separately-owned subsidiary.  See id. at 493.  Through misrepresentation, defendant induced its employees to switch employers and voluntarily release it from its benefit obligations.  See id. at 515.  The separately-owned subsidiary later went out of business and, because it and its welfare benefit plans no longer existed, plaintiffs had no alternate remedy under Section 502.  See id. at 515.  As appropriate equitable relief for defendant's breach of fiduciary duty, the district court ordered defendant to reinstate the former employees to its own benefit plan under Section 502(a)(3).  See id. at 495.  The Eighth Circuit Court of Appeals and the Supreme Court affirmed.  See id. at 495, 515.

17

In <u>Varity</u>, the Supreme Court found that Section 502(a)(3) authorizes a plan beneficiary to bring suit for individualized equitable relief for a plan administrator's breach of fiduciary duty. In so finding, the Supreme Court addressed whether allowing such claims would result in plaintiffs re-packaging their failure-to-pay claims, <u>i.e.</u> their claims under Section 502(a)(1)(B), as claims for breach of fiduciary duty. With regard to this concern, the Supreme Court stated as follows:

> [Section 502(a)(3)] authorizes "appropriate" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

<u>Id.</u> at 515 (citations omitted).

Following <u>Varity</u>, the Tenth Circuit has found that plaintiffs cannot bring claims under Section 502(a)(3) when Section 502(a)(1)(b) provides adequate relief for the alleged injury. <u>See</u> <u>Lefler v. United Healthcare of Utah, Inc.</u>, 72 Fed. App'x 818, 826, 2003 WL 21940936, at *6 (10th Cir. Aug. 14, 2003); <u>see also</u> <u>Moore v. Berg Enter., Inc.</u>, No. 98-4080, 1999 WL 1063823, at *2 n.2 (10th Cir. Nov. 23, 1999). In <u>Lefler</u>, the Tenth Circuit affirmed dismissal of plaintiffs' claim under Section 502(a)(3) where Section 502(a)(1)(B) provided adequate relief for the alleged injury. Plaintiffs claimed that their health maintenance organization ("HMO") improperly calculated co-payment amounts. Plaintiffs sought to recover benefits under Section 502(a)(1)(B) and also sought equitable relief under Section 502(a)(3). Specifically, under Section 502(a)(3), plaintiffs sought to impose a constructive trust for monies improperly held as a result of defendant's breach of fiduciary duty. <u>See</u> <u>Lefler</u>, 72 Fed. App'x at 822. Regarding the claim under Section 502(a)(1)(B), the district court granted summary judgment in favor of defendant, finding that its co-payment calculation resulted from a reasonable interpretation of the plan. <u>See</u> <u>id.</u> at 819. The district court dismissed

the claim under Section 502(a)(3) because plaintiffs presented an arguable claim under Section 502(a)(1)(B).  See id. at 822.  The Tenth Circuit affirmed, stating as follows:

> We agree with the district court that consideration of a claim under [Section 502(a)(3)] is improper when the Class, as here, states a cognizable claim under [Section 502(a)(1)(B)], a provision which provides adequate relief for alleged class injury.  "[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'."  Varity, 516 U.S. at 515, 116 S. Ct. 1065.  Dismissal of the [Section 502(a)(3)] claim was proper as a matter of law.

Id. at 826.

Under Varity and Lefler, plaintiffs cannot assert a claim under Section 502(a)(3) if Section 502(a)(1)(B) provides adequate relief for the alleged injury.  Here, plaintiffs seek the same relief under both sections – a declaratory judgment that they are entitled to restoration of benefits which they received at the time of retirement.  See Amended Complaint (Doc. #14) ¶ 126.  As a matter of law, because Section 502(a)(1)(B) provides adequate relief for the alleged injury, plaintiffs cannot prevail on their claim for declaratory relief under Section 502(a)(3).  See Varity, 516 U.S. at 515; Lefler, 72 Fed. App'x at 826; see also Hyde v. Benicorp Ins. Co., 363 F. Supp.2d 1304, 1307-09 (D. Kan. 2005).[15]  The Court therefore dismisses plaintiff's claim for declaratory relief under Section 502(a)(3) (part of Count III).

_____

[15]   In Count II, plaintiffs seek equitable relief under Section 502(a)(3) for alleged breach of fiduciary duties in (1) failing to provide clear and accurate plan summaries and (2) misinforming, misleading and misrepresenting benefits to plan participants.  Defendants have not moved to dismiss this claim.  Unlike Count III's claim for declaratory relief under Section 502(a)(3), it appears that Count II's claim under Section 502(a)(3) does not seek to recover for the same injury as Count I.  In Count I, plaintiffs seek restoration of vested benefits under Section 502(a)(1)(B).  In Count II, plaintiffs seek alternative equitable relief under Section 502(a)(3) if it turns out that they do not have a vested right to benefits.  In these circumstances, Count II seeks alternate relief.  It therefore appears that Varity would not require dismissal of Count II's claim under Section 502(a)(3).  See, e.g., Jones v. Am. Gen. Life & Accident Ins. Co., 370 F.3d 1065, 1071 (11th Cir. 2004).

2.        **Declaratory Judgment Act**

Defendants urge the Court to decline jurisdiction under the DJA, 28 U.S.C. § 2201.[16]

The DJA confers jurisdiction on federal courts to issue declaratory judgments in appropriate cases.

See Calderon v. Ashmus, 523 U.S. 740, 745 (1998).  Under the statute, federal courts have broad

discretion to render declaratory relief.  See Kunkel v. Cont'l Cas. Co., 866 F.2d 1269, 1273 (10th

Cir. 1989) (DJA does not impose duty on trial court to make declaration of rights); Executive Risk

Indem. Inc. v. Sprint Corp., 282 F. Supp.2d 1196, 1202 (D. Kan. 2003) (courts have unique and

substantial discretion under DJA).  In deciding whether to entertain a declaratory judgment action,

the Court considers whether (1) it would settle the controversy; (2) it would serve a useful purpose

in clarifying the legal relation at issue; (3) it is being used merely for purposes of procedural fencing

or to provide an arena for a race to res judicata; (4) it would increase friction between the federal

and the state court and improperly encroach upon state jurisdiction; and (5) an alternative remedy

would be better or more effective.  State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th

Cir. 1994).

Regarding the Mhoon factors, defendants do not contest factors one through four.  Applying

these factors, the Court finds no reason to decline jurisdiction.  As to the first and second factors,

it appears that the entire controversy is before the Court and will be settled in this lawsuit.

---

[16]        The DJA provides as follows:

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).

Moreover, a declaration could serve a useful purpose in clarifying whether plaintiffs have a right to receive the contested benefits. As the third and fourth factors, the record reveals no issues regarding procedural fencing or improper encroachment on state jurisdiction.

Regarding the fifth Mhoon factor, i.e. whether an alternative remedy would be better or more effective, defendants assert that ERISA provides an exclusive means for settling the controversy between the parties. See Defendants' Memorandum (Doc. #18) at 17-18. Defendants cite no authority, however, that as a matter of law plaintiffs cannot seek relief under both the DJA and ERISA. As a practical matter, it appears that plaintiffs' DJA claims are superfluous because ERISA (not the DJA) provides the substantive rights which plaintiffs invoke. See Farmers Alliance Mut. Ins. Co. v. Jones, 570 F.2d 1384, 1386 (10th Cir. 1978) (DJA provides procedural remedies, not substantive rights). Although it appears that the DJA will not provide plaintiffs any additional relief, defendants have not shown that as a matter of law plaintiffs cannot seek relief under both the DJA and ERISA. Cf. Admin. Comm. of Wal-Mart Assoc. Health & Welfare Plan v. Willard, 302 F. Supp.2d 1267, 1276 (D. Kan. 2004) (noting jurisdiction under DJA over ERISA claim). On these facts, the Court will not decline to exercise jurisdiction over the DJA claim.

## C.     ADEA (Count IV)

Plaintiffs allege that by terminating or reducing their life, medical and prescription drug benefits, defendants violated the ADEA. See Complaint (Doc. #14) ¶¶ 128, 131, 143. With respect to life insurance benefits, defendants assert that as a matter of law, the ADEA claim must fail because (1) defendants did not terminate or reduce benefits based on age and (2) the changes apply to all retirees, regardless of age. See Defendants' Memorandum (Doc. #18) at 19-20. With respect to medical and prescription drug benefits, defendants assert that as a matter of law, the ADEA claim must fail because a regulation by the Equal Employment Opportunity Commission ("EEOC")

permits the plan amendments.  See id. at 20-21.

### 1.    Life Insurance Benefits

Defendants assert that with regard to life insurance benefits, plaintiffs' ADEA claim must fail because plaintiffs do not allege that defendants terminated or reduced their benefits because of age.  Specifically, defendants point to paragraph 102 of the amended complaint, which states as follows:

> On July 26, 2007, Defendant Embarq also announced that it was eliminating the Grand-fathered Life Insurance benefit and all other life insurance benefit[s] for retirees participating in the VEBA plan.  Embarq also announced that it was reducing the level of other life insurance benefits, to a maximum of $10,000, an amount which was as little as 25% of the pre-existing life insurance benefits.

Amended Complaint (Doc. #14) ¶ 102.[17]  Defendants contend that paragraph 102 admits that defendants based their decision to terminate or reduce life insurance benefits on non-discriminatory factors, and not on age.  See Defendants' Memorandum (Doc. #18) at 19.[18]  In the Court's view, however, paragraph 102 does not allege the reason for defendants' decision.  Elsewhere in the amended complaint, plaintiffs allege that because of age, defendants terminated their life insurance benefits in violation of the ADEA prohibition against intentional and disparate impact age discrimination.  See Amended Complaint (Doc. #14) ¶¶ 128, 143.[19]  In ruling on defendants' motion

---

[17]    Although defendants' brief cites paragraph 102 of the complaint, see Defendants' Memorandum at 19-20, the context of their argument reveals that they are referring to paragraph 102 of the amended complaint.

[18]    Defendants contend that regardless of age, the plan amendments subject all retirees to the same eligibility requirements, see id. at 20, but the record is not sufficiently developed for the Court to conclusively determine this fact.

[19]    Defendants do not argue that plaintiffs have insufficiently alleged the prima facie elements of intentional or disparate impact age discrimination.  The Court has made no determinations in this regard.

to dismiss, the Court must accept plaintiffs' allegations as true and construe them in a light most favorable to plaintiff.  On this record, defendants have not shown that as a matter of law plaintiffs cannot prevail on their ADEA claims regarding termination of life insurance benefits.

### 2.     Medical And Prescription Drug Benefits

Defendants assert that with regard to medical and prescription drug benefits, the ADEA claim must fail as a matter of law because federal regulation expressly permits reduction in such benefits for Medicare-eligible retirees.  Specifically, defendants cite 29 C.F.R. § 1625.32(b), an EEOC rule adopted in 2007, which "exempt[s] from all [ADEA] prohibitions" the coordination of employee benefit plan and Medicare health benefits for retired participants.  29 C.F.R. § 1625.32(b).  Rule 1625.32(b) states as follows:

> Some employee benefit plans provide health benefits for retired participants that are altered, reduced or eliminated when the participant is eligible for Medicare health benefits . . . whether or not the participant actually enrolls in the other benefit program.  Pursuant to the authority contained in section 9 of the Act, and in accordance with the procedures provided therein and in § 1625.30(b) of this part, it is hereby found necessary and proper in the public interest to exempt from all prohibitions of the Act such coordination of retiree health benefits with Medicare or a comparable State health benefit plan.

29 C.F.R. § 1625.32(b).  Defendants note that Section 9 of the ADEA, 29 U.S.C. § 628, expressly authorizes the EEOC to establish reasonable exceptions to the ADEA and argue that because Section 1625.32(b) specifically authorizes employee benefit plans to alter, reduce or eliminate benefits when a retired participant is eligible for Medicare, the reduction of plaintiffs' medical and drug prescription benefits does not violate the ADEA.  See Defendants' Memorandum (Doc. #18) at 20-21.

Plaintiffs assert that Rule 1625.32(b) is invalid because it contradicts another EEOC regulation, 29 C.F.R. § 1625.10(e), which Section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2)(B),

23

codifies into law. Section 4(f)(2) of the ADEA provides that notwithstanding other prohibitions, it is not unlawful for an employer to observe the terms of a bona fide employee plan where the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker, as permissible under Rule 1625.10. <u>See</u> 29 U.S.C. § 623(f)(2)(B).[20] Rule 1625.10 interprets Section 4(f)(2) and generally provides that age-based reductions in employee benefit plans are permissible where such reductions are justified by significant cost considerations. <u>See</u> 29 C.F.R. § 1625.10.[21] Rule 1625.10 explains application of Section 4(f)(2) of the ADEA and describes the types of cost- benefit analyses upon which an

---

[20]    Section 4(f)(2) of the ADEA states that notwithstanding other prohibitions, it is not unlawful for an employer to observe the terms of a bona fide employee plan–

> where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker, as permissible under [19 C.F.R. § 1625.10] (as in effect on June 22, 1989)[.]

29 U.S.C. § 623(f)(2)(B).

Congress enacted the current version of Section 4(f)(2) in 1990. Before 1990, Section 4(f)(2) provided that notwithstanding other prohibitions, it was not unlawful for an employer to observe the terms of any bona fide employee benefit plan "which [was] not a subterfuge to evade the purposes of [the ADEA]." <u>Pub. Employees Ret. Sys. of Ohio v. Betts</u>, 492 U.S. 158, 165-66 (1989) (quoting 29 U.S.C. § 623(f)(2)). In <u>Betts</u>, the Supreme Court found that under that language, the term "subterfuge" connoted a subjective intent to evade a statutory requirement, <u>i.e.</u> that to show a violation, plaintiff had to prove that defendant intended for the discriminatory plan provision to serve the purpose of discriminating in some aspect of the employment relation. <u>See id.</u> at 171, 181. Based on this reading, the Supreme Court found that Rule 1625.10 – which interpreted Section 4(f)(2) of the ADEA as permitting age-based reductions in employee benefit plans if they were justified by significant cost considerations – actually contradicted Section 4(f)(2) and was therefore invalid. <u>See id.</u> at 175. In response to <u>Betts</u>, Congress amended the ADEA to clarify that with regard to employee benefits, the statute prohibits age-based discrimination "except when age-based reductions in employee benefit plans are justified by significant cost considerations." Older Workers Benefit Protection Act § 101, Pub. L. 101-433.

[21]    Rule 1625.10 has remained substantially unchanged since 1989. <u>Compare</u> 29 C.F.R. § 1625.10 (1989) <u>with</u> 29 C.F.R. § 1625.10 (2008).

employer may rely to show that age-related cost considerations justify lower level benefits.  See id. Subsection (e) of Rule 1625.10 provides that with regard to governmental benefits, an employer does not violate the ADEA by relying on the government to provide age-based benefits (such as Medicare) so long as the action does not result in older employees receiving a lesser benefit of any type than that received by a similarly situated younger employee.  See 29 C.F.R. § 1625.10(e).[22]

Plaintiffs assert that Rule 1625.32(b) is invalid because it directly contradicts Rule 1625.10(e), which the ADEA codifies into law in Section 4(f)(2).  Specifically, plaintiffs assert that by incorporating Rule 1625.10 into the text of Section 4(f)(2), Congress explicitly barred the EEOC from enacting regulations which alter the force and meaning of Rule 1625.10.  See Plaintiffs' Opposition (Doc. #21) at 27-28.  This argument, to say the least, is stretched too far.  As an initial matter, Section 4(f)(2) of the ADEA does not expressly incorporate the language of Rule 1625.10. Section 4(f)(2) provides that an employer may lawfully observe the terms of a bona fide employee plan where, for each benefit or benefit package, "the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger

---

[22]     Rule 1625.10(e) provides as follows:

Benefits provided by the Government.  An employer does not violate the Act by permitting certain benefits to be provided by the Government, even though the availability of such benefits may be based on age.  For example, it is not necessary for an employer to provide health benefits which are otherwise provided to certain employees by Medicare.  However, the availability of benefits from the Government will not justify a reduction in employer-provided benefits if the result is that, taking the employer-provided and Government-provided benefits together, an older employee is entitled to a lesser benefit of any type (including coverage for family and/or dependents) than a similarly situated younger employee. For example, the availability of certain benefits to an older employee under Medicare will not justify denying an older employee a benefit which is provided to younger employees and is not provided to the older employee by Medicare.

29 C.F.R. § 1625.10(e) (1989).

worker, as permissible under [Rule 1625.10]." 29 U.S.C. § 623(f)(2)(B).  The reference to Rule 1625.10 demonstrates the cost analysis which is permissible under the law.  Plaintiffs cite no authority that Section 4(f)(2) codifies Rule 1625.10, in its entirety, into law.  Moreover, Rule 1625.32 does not necessarily contradict Rule 1625.10(e).  Rule 1625.10(e) discusses government-paid benefits with regard to employees, where Rule 1625.32 applies to *retiree* health benefits.  See Appendix to § 1625.32, 72 Fed. R. 72945.  Thus, Rule 1625.10(e) applies to current employees who are eligible to receive Medicare.

As noted, defendants assert that Section 9 of the ADEA authorized the EEOC to promulgate Rule 1625.32.  Section 9 authorizes the EEOC to establish reasonable exemptions to the ADEA which are "necessary and proper in the public interest."  29 U.S.C. § 628.[23]  Plaintiffs argue that the EEOC may not use Section 9 to contradict specific language contained in Rule 1625.10, and cite rules of general statutory construction which state that a specific statute trumps a general statute.  See Plaintiffs' Opposition (Doc. #21) at 29.  Plaintiffs' theory, however, would render Section 9 meaningless.  By its terms, Section 9 allows the EEOC to establish reasonable exemptions from provisions of the ADEA.  See 29 U.S.C. § 628.  The fact that Rule 1625.10 may contain a provision which contradicts the exemption does not diminish the EEOC's authority in this regard.  See AARP v. EEOC, 489 F.3d 558, 563-64 (3d Cir. 2007), cert. denied, 128 S. Ct. 1733 (2008).

Plaintiffs argue that under controlling Tenth Circuit law, the EEOC lacks authority to adopt

---

[23]     Section 9 provides, in part, as follows:

* * * the Equal Employment Opportunity Commission may issue such rules and regulations as it may consider necessary or appropriate for carrying out this chapter, and may establish such reasonable exemptions to and from any or all provisions of this chapter as it may find necessary and proper in the public interest.

29 U.S.C. § 628.

26

the exemption contained in Rule 1625.32.  <u>See</u> <u>Plaintiffs' Opposition</u> (Doc. #21) at 31.  The case

which plaintiffs cite, <u>Lee v. Gallop Auto Sales, Inc.</u>, 135 F.3d 1359 (10th Cir. 1998), is

distinguishable.  In that case, the statute provided no authority for a regulatory exemption.  <u>See</u> <u>id.</u>

at 1360-61.  Here, Section 9 of the ADEA expressly grants the EEOC authority to establish

reasonable exemptions which are necessary and proper in the public interest.  <u>See</u> 29 U.S.C. § 628.

In <u>AARP v. EEOC</u>, the Third Circuit found that Section 9 expressly authorized the EEOC

to promulgate Rule 1625.32.  <u>See</u> 489 F.3d at 565.[24]  Plaintiffs sought to enjoin implementation of

the regulation, arguing that it violated the ADEA.  <u>See</u> <u>id.</u> at 560.  In determining whether the EEOC

had properly issued the rule, the Third Circuit applied the two-step approach articulated in <u>Chevron</u>

<u>U.S.A., Inc. v. Natural Res. Def. Council</u>, 467 U.S. 837, 842-43 (1984).[25]  <u>See</u> <u>AARP</u>, 489 F.3d at

562-65.  Under step one, the Third Circuit found that Section 9 clearly and unambiguously grants

the EEOC authority to allow limited exceptions to the ADEA so long as the exceptions are

reasonable and necessary.  <u>See</u> <u>AARP</u>, 489 F.3d at 562-64.[26]  The Third Circuit found that because

the EEOC had shown that the exemption was "reasonable" and "necessary and proper in the public

interest," the rule constitutes a valid exercise of EEOC authority under Section 9.[27]  <u>Id.</u> at 564.[28]

---

[24]     It appears that no other court has addressed the validity of Rule 1625.32.

[25]     Under step one of the <u>Chevron</u> analysis, the court determines "whether Congress has
directly spoken to the precise question at issue."  <u>AARP</u>, 489 F.3d at 560 (quoting <u>Chevron</u>, 467
U.S. at 842).  If the statute clearly expresses Congress' intent, the inquiry ends and the court must
give effect to such intent.  <u>Id.</u> (quoting <u>Chevron</u>, 467 U.S. at 842-43).  If the statute is silent or
ambiguous, the court proceeds to determine whether the agency interpretation is based on a
"permissible construction" of the statute.  <u>Id.</u> (quoting <u>Chevron</u>, 467 U.S. at 843).

[26]     Because it found that Congress had clearly expressed its intent to permit such
exemptions under Section 9, the Third Circuit did not proceed to step two of the <u>Chevron</u> analysis.
<u>See</u> <u>id.</u> at 565.

[27]     With regard to whether the exemption was "reasonable" and "necessary and proper
(continued...)

Based on AARP v. EEOC, the Court rejects plaintiffs' argument that Rule 1625.32 is invalid. Plaintiffs assert even if it is valid, it does not apply because defendant announced its decision to reduce benefits on July 26, 2007 and the regulation did not become effective until five months later on December 26, 2007.[29]  The Court disagrees.  Plaintiffs allege that the termination of medical and prescription drug benefits became effective January 1, 2008, six days after the effective date of the rule.  See Amended Complaint (Doc. #14) ¶ 30.  Moreover, the appendix to Rule 1625.32 states it applies to existing as well as newly created employee benefit plans.  See 72 Fed. Reg. 72938.  On

---

[27](...continued)
in the public interest," the Third Circuit stated as follows:

> Here, the EEOC issued the proposed regulation in response to its finding that employer-sponsored retiree health benefits were decreasing. 68 Fed. Reg. at 41,543-44.  Rather than maintaining retiree benefits at pre-Medicare eligibility levels for all retirees in order to avoid discrimination under the ADEA, some employers chose to reduce all retiree health benefits to a lower level. Id. at 41,546. Further, in addition to rising health care costs and increased demand for retiree benefits, the EEOC correctly noted that employers are not required to provide any retiree health benefits, or to maintain such plans once they have been established. Id. at 41,542-43. Retiree benefits often face elimination under these constraints, and the EEOC issued the proposed exemption to "permit[ ] employers to offer [retiree] benefits to the greatest extent possible." Id. at 41,543.

AARP, 489 F.3d at 564 (footnotes omitted).

[28]    The Third Circuit also rejected plaintiffs' alternative argument that Rule 1625.32 was invalid under the Administrative Procedure Act, 5 U.S.C. § 706(2)(a).  See AARP, 489 F.3d at 565-67.

[29]    Citing Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 620 (2007), plaintiffs assert that the date on which defendants announced the decision constitutes the date of violation for ADEA purposes.  See Plaintiffs' Opposition (Doc. #21) at 32.  In Ledbetter, the Supreme Court found that if an employer engages in a series of separately actionable discriminatory acts, a fresh violation occurs when each act is committed and plaintiff must file a separate EEOC charge within 180 days after each allegedly discriminatory decision was made and communicated to her.  See id. Ledbetter did not address the issue here, i.e. whether a federal regulation applies to a decision which defendant announced before the effective date of the regulation, but implemented after the effective regulation date.

28

this record, as a matter of law, defendants have shown that 29 C.F.R. § 1625.32 applies to plaintiffs' ADEA claims regarding medical and prescription drug benefits.  The Court therefore dismisses those claims.[30]

**D.      State Age Discrimination Claims (Counts V, VI and VII)**

Plaintiffs assert claims under Ohio, Oregon and Tennessee age discrimination statutes. Defendants assert that as a matter of law, ERISA preempts state age discrimination claims.

Under <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85 (1983), ERISA preempts state anti-discrimination law to the extent that state law prohibits practices which are otherwise lawful under federal law.  <u>See</u> <u>id.</u> at 95-108.  Thus, in this case, to the extent that the state statutes may prohibit practices which are lawful under the ADEA, ERISA would preempt plaintiffs' state age discrimination claims.  Defendants argue generally that the relief which plaintiffs seek "would directly affect the material provisions of the ERISA plans at issue [in this case]."  <u>Defendants' Memorandum</u> (Doc. #18) at 22.  Defendants, however, do not articulate in what way the state age discrimination statutes prohibit practices which are otherwise lawful under the ADEA.  On this record, defendants have not shown that plaintiffs cannot prevail on their state law age discrimination claims.  The Court therefore declines to dismiss those claims.

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion To Dismiss The First, Third, Fourth, Fifth, Sixth And Seventh Claims For Relief In Plaintiffs' Amended Complaint</u> (Doc. #17) filed April 30, 2008 be and hereby is **SUSTAINED in part.**  The Court dismisses plaintiffs' claims for declaratory relief under ERISA Section 502(a)(3) (part of Count III) and plaintiffs' ADEA claims regarding medical and prescription drug benefits (part of Count IV).  All other claims

---

[30]      The ADEA claims regarding life insurance benefits remain in the case.

(including the claim for declaratory relief under ERISA Section(a)(1)(B) (part of Count III) and the

ADEA claims regarding life insurance benefits (part of Count IV)) remain in the case.

Dated this 2nd day of December, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge