# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM DOUGLAS FULGHUM, *et al.*

        *Plaintiffs*,

vs.

        Case No. 07-2602-EFM

EMBARQ CORPORATION, *et al.*

        *Defendants.*

## MEMORANDUM AND ORDER

Plaintiffs assert putative class action claims against Defendants for alleged violations of the Employee Retirement Income Security Act ("ERISA"), the Age Discrimination in Employment Act ("ADEA"), the Ohio Civil Rights Act, the Oregon Unlawful Discrimination Law, and the Tennessee Human Rights Act.

Before the Court is Plaintiffs' Motion to Certify Class (Doc. 127) and Plaintiffs' Motion to Certify Collective Action (Doc. 129). For the following reasons, the Court reserves ruling on Plaintiffs' Motion to Certify Class and Plaintiffs' Motion to Certify Collective Action until after a hearing has been set and the parties have addressed certain issues set forth in this Order.

## I. Factual Background[1]

Plaintiffs and the members of the proposed class and sub-classes are retired employees of

---

[1]The Court is not making any determination as to the merits of Plaintiffs' claims but rather setting forth the facts as stated in Plaintiffs' Third Amended Complaint.

various national, regional and local telecommunications operating and supply companies which are now wholly-owned subsidiaries of Defendant Embarq Corporation ("Embarq"). Plaintiffs bring this action on behalf of themselves and the following Class:

> All persons, including all plan participants and all eligible spouse and dependent plan beneficiaries, whose rights to medical, prescription drug, and/or life insurance benefits or premium subsidies have been adversely affected by the terminations, reductions and changes in retiree benefits which were announced (1) by Defendant Sprint Nextel Corporation in or about November 2005, and (2) by Defendant Embarq Corporation on July 26, 2007.

> The "VEBA Sub-Class" is defined as follows:

> All members of the Class who were participants or beneficiaries in the Carolina Telephone & Telegraph Voluntary Employee Beneficiary Association (VEBA) as of July 26, 2007.

> The "ADEA Class" is defined as:

> All persons, including all plan participants and all eligible spouse and dependent plan beneficiaries, whose rights to medical, prescription drug, and/or life insurance benefits or premium subsidies have been adversely affected by the terminations, reductions and changes in retiree benefits which were announced by Defendant Embarq Corporation on July 26, 2007.

> There are three other proposed sub-classes for three states, Ohio, Oregon, and Tennessee.

These sub-classes are defined as:

> All members of the Class whose final place of employment by any Defendant or any of their affiliates or subsidiaries was in the State of [Ohio],[Oregon], [Tennessee].

Embarq was created as a spin-off of the local telecommunications carriers owned by Defendant Sprint Nextel on May 17, 2006. Plaintiffs are considered to be retirees of Embarq. In connection with the spin-off of Embarq, Sprint Nextel purported to assign to Embarq its legal obligations to provide to Plaintiffs and the members of the Class the subject retiree medical,

prescription drug, and life insurance benefits. Plaintiffs did not consent to this assignment of benefits.

Defendant Carolina Telephone & Telegraph Company ("CT&T") was formed as a North Carolina corporation. In 1964, CT&T created VEBA. Defendant VEBA was a plan pre-funded by tax-favored employer contributions made by CT&T and its successors. The VEBA provided disability and death benefits to current employees of CT&T and death benefits to retirees of CT&T. The death benefit was defined by the VEBA as an amount equal to twelve months of annual wages for the employee or the retiree at his final salary, or $500, whichever amount was greater.

On or about March 28, 1969, CT&T became a wholly owned subsidiary of United Utilities, Inc., a Kansas City holding company. During 1971, CT&T established a new employee welfare benefits plan to provide its employees and retirees with additional life insurance at no cost to the employee ("the Grand-fathered Life Insurance"). The Grand-fathered Life Insurance was in addition to the VEBA death benefit and was not a replacement for that benefit. The Grand-fathered Life Insurance plan provided employees with a death benefit in the amount of two times their annual salary (rounded down to the nearest $1,000) for the first five years of their retirement. After five years of retirement, the Grand-fathered Life Insurance provided a death benefit in an amount equal to one times the employee's annual salary (rounded down to the nearest $1,000), with coverage continuing at that amount for the remainder of the employee's life.

From 1977, if not earlier, until 2007, Defendant CT&T and the other Defendant employers provided employees and retirees with company-paid life insurance benefits (which were equal to as much as $40,000 to a surviving spouse or other beneficiary). From 1977 until the retirements of Plaintiffs, Defendants also offered employees and retirees the opportunity to purchase optional life

insurance benefits at group rates, but solely at the employee's or retiree's own expense. The majority of Plaintiffs were induced by Defendants' misrepresentations about the company-paid life insurance benefits, VEBA death benefits, and Grand-fathered Life Insurance benefits to understand that these benefits and coverages were secure and adequate protection for their surviving spouses and dependents, and they generally declined their opportunity to obtain optional life insurance coverage, either through Defendants' own programs or on the open market.

In or about November 2005, Defendant Sprint Nextel announced that it was terminating its program of prescription drug benefits for Medicare-eligible retirees and dependents, effective January 1, 2006. By letter dated July 26, 2007, Defendant Embarq announced that it was eliminating medical benefits and the program of subsidies for drug benefits for any retirees who were eligible for Medicare.

For at least thirty years, from at least 1977, if not earlier, until July 26, 2007, Defendants repeatedly represented to Plaintiffs, both orally and in writing, that they would continue after and throughout retirement, i.e., until they died, to receive the company-paid life insurance benefits coverage, and in the case of the VEBA Sub-Class, the Grand-fathered Life Insurance benefits coverage in addition to their VEBA death benefits, and that these life insurance and death benefits would be provided at no cost.

On July 26, 2007, Defendant Embarq announced that it was eliminating the Grand-fathered Life Insurance benefit and all other life insurance benefits for retirees participating in the VEBA plan. Embarq also announced that it was reducing the level of other life insurance benefits, to a maximum of $10,000, an amount which was as little as 25% of the pre-existing life insurance benefits.

The termination of life insurance benefits became effective either September 1, 2007 or January 1, 2008. These cutbacks in retiree benefits have caused Plaintiffs and members of the Class injury and damage in the form of payment of increased premiums for life insurance benefits and coverage and the inability to obtain or maintain alternative life insurance coverage at reasonable cost due to their now advanced aged and impaired health conditions. Plaintiffs have also suffered other financial losses resulting from Defendants' misrepresentations, including the loss of salary, pension and other fringe benefits that they would have received as a result of continued employment had they not been induced by Defendants to retire early, and the loss of income and earnings from post-retirement employment and business opportunities that they would have received had they not been misled by Defendants about the security of their retiree benefits.

Plaintiffs' first and third claims seek the restoration of welfare benefits pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). They seek injunctive relief in the form of restoring to Plaintiffs and the members of the Class the subject medical, prescription drug and life insurance benefits and compelling Defendants to provide these benefits to them for the remainder of their lifetimes. Plaintiffs second claim alleges a breach of fiduciary duty pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiffs fourth claim is an ADEA claim on the basis of disparate impact, and their fifth, sixth, and seventh claims for relief are state-law age discrimination claims that Plaintiffs state mirror their ADEA claim.

## II. Analysis

There are currently two motions before the Court including Plaintiffs' Motions to Certify a Class and Plaintiffs' Motion to Certify a Collective Class. In one motion (Doc. 127), Plaintiffs seek to certify a class on claims of restoration of benefits (Counts I, III) and on their state age

discrimination claims in Oregon, Ohio, and Tennessee (Counts V, VI, and VII). They also seek to certify specific issues with respect to their second claim, breach of fiduciary duty. In another motion (Doc. 129), Plaintiffs seek to certify a collective action with respect to their fourth claim, the ADEA claim.

**A. Plaintiffs' Motion to Certify Class (Doc. 127)**

***Class Certification as to Counts I, III, V, VI, and VII***[2]

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."[3] "[A]t the class certification stage a district court must generally accept the substantive, non-conclusory allegations of the complaint as true."[4] Although the merits of a claim are not the "focal point," "the merits of the claims at bar may be intertwined with the proper consideration of other issues germane to whether the case should be certified as a class action."[5] The Court must conduct a rigorous analysis to ensure that Rule 23's requirements are met.[6] "Courts should err on the side of class certification because they have broad discretion to later redefine (or even decertify) the class if necessary."[7] The party seeking class certification has the burden to demonstrate that the class meets the requirements of Rule 23(a) and the requirements of

_____

[2]The Court will address the breach of fiduciary duty claim (Count II) separately below.

[3]*DG ex rel. Stricklin v. DeVaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citations and internal quotations omitted).

[4]*Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (citations omitted).

[5]*Id.* at 1266 (citations and internal quotations omitted).

[6]*Id.* at 1265 (citations omitted).

[7]*Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (citations omitted).

either Rule 23(b)(1), (2), or (3).[8]

## Rule 23(a) Requirements

"Rule 23(a) requires numerosity of class members, commonality of at least one question of fact or law among the class, typicality of named plaintiffs' claims or defenses to the class's claims or defenses, and adequacy of the named plaintiffs and their attorneys as class representatives."[9]

### *Numerosity*

Rule 23(a)(1) requires Plaintiffs to demonstrate that "the class is so numerous that joinder of all members is impracticable." To satisfy this prerequisite, there is no set formula, but Plaintiffs must present "some evidence of established, ascertainable numbers constituting the class."[10] In this case, Plaintiffs assert that as of January 1, 2004, there were 12,975 retired participants in the Sprint Welfare Benefit Plan for Retirees and that there were 2,569 retired participants in the VEBA plan. Plaintiffs' complaint also names 750 individuals as non-representative plaintiffs for purposes of the ADEA claim but who are also members of the proposed Class under the ERISA counts. With respect to the affected former employees from Ohio, Oregon, and Tennessee, Plaintiffs state that the data is currently unavailable but there is no reason to doubt that a sufficient number exists due to the

---

[8]*Stricklin*, 594 F.3d at 1194.

[9]*Id.* (citing Fed. R. Civ. P. 23(a)(1)-(4)). Fed. R. Civ. P. 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

[10]*Rex v. Owens ex. rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).

extensive operations Defendants carried out in these states. Defendants do not appear to address the numerosity issue. The Court finds that the proposed class is so numerous that joinder of all members would be impracticable. Accordingly, Plaintiffs have satisfied the numerosity requirement.

*Commonality*

"A finding of commonality requires only a single question of law or fact common to the entire class."[11] Plaintiffs identify ten common factual and legal questions including: (1) whether Plaintiffs and members of the Class have been or will be unlawfully excluded from Defendants' ERISA benefit plans; (2) whether Defendants breached the terms of these ERISA benefit plans; (3) whether Plaintiffs and the members of the Class and Sub-Classes have a vested right to the retiree medical, prescription drug and life insurance benefits; (4) whether Defendants and their agents were acting as fiduciaries when communicating about the retiree benefits; (5) whether Defendants engaged in a course of conduct of misrepresenting the lifetime nature of the retiree benefits; (6) whether Defendants engaged in a practice of inadequately disclosing the companies' reservation of rights to amend or terminate the retiree benefits in summary plan descriptions and other communications; (7) whether a reasonable employee would be misled by Defendants' misrepresentations and omissions; (8) whether Defendants' omissions of material information about the retiree benefits give rise to presumptions of reliance; (9) whether Defendants violated the Ohio Civil Rights Act, Oregon Civil Rights Act, and/or Tennessee Human Rights Act by direct and/or indirect age discrimination as a result of eliminating or reducing the life insurance benefits; and (10) whether Plaintiffs and the members of the Class and Sub-Classes are entitled to the relief prayed for in their Third Amended Complaint.

---

[11]*Stricklin*, 594 F.3d at 1195.

Defendants assert that Plaintiffs have not identified a plan that is common to the entire class. In addition, Defendants argue that Plaintiffs have failed to explain how any of the plan documents "define the class" and that Plaintiffs have offered no proof that the plan documents contain similar language. Defendants contend that because Plaintiffs have failed to specifically identify a plan document common to all of the individuals in the proposed class that Plaintiffs fail to meet the adequacy, commonality, and typicality requirements of class action certification.

Defendants rely on a District of Kansas case and assert that the court held that plaintiffs must prove that the claims of the class turn on either one plan document common to the entire class or plan language similar enough to permit a class-wide determination of the subject benefits.[12] Defendants' contention, however, that Plaintiffs must prove that the SPDs and plan documents are similar or that there is one common document is too restrictive at the class certification stage. As noted above, the question is whether there is at least one question of law or fact common to the class. In addition, in the District of Kansas case, the Court declined to certify a broad class because the plaintiffs argued that the plan language did not apply to them.[13] The Court therefore found that the plaintiffs' claims were not representative of the proposed class and were in fact antagonistic to proposed members.[14] As such, this case is distinguishable.

---

[12]Defendants cite *Brown v. Utilicorp United, Inc*., 1998 WL 166593 (D. Kan. Feb. 24, 1998).

[13]*Id*. at *2.

[14]*Id*.

Commonality may be satisfied even though there are separate plans governing the plaintiff's rights so long as the plaintiffs seek the restoration of benefits under the same legal theory.[15] While there may be several different plans applicable to retirees, there is a common question as to whether Defendants' uniform decision to reduce all retirees' medical, health, and life insurance benefits was unlawful under ERISA or the respective state age discrimination laws. All retirees were subject to Defendants' decision and all appear to be uniformly affected, and Plaintiffs have already proposed the VEBA Sub-Class to distinguish those individuals from the larger class. This Court does not find that Defendants' decision was unlawful, but rather it finds that Plaintiffs have demonstrated that a common question of law exists. As such, Plaintiffs have satisfied the commonality requirement.

### Typicality

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of the proposed class. "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality."[16] If the claims of named plaintiffs and the class members "are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality."[17]

Plaintiffs assert that the claims arise out of the same course of conduct by Defendants and are based on the same legal theories as Plaintiffs and the proposed class contend that they are entitled to lifetime health and life insurance benefits. Claims will be decided on the basis of the same

---

[15]*See Reese v. CNH America, Inc.*, 227 F.R.D. 483, 486-89 (E.D. Mich. 2005) (finding that commonality and typicality existed for a section 502(a)(1)(B) claim despite the fact that the individuals retired under different plans because the individuals all sought common relief, i.e., the defendant's continued payment of their health care premium); *see also Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (finding that plaintiffs met the commonality and typicality requirement even though four different pension plans were involved and most of the putative class was covered by a plan that was different than the named plaintiff's plan).

[16]*Stricklin*, 594 F.3d at 1198 (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982)).

[17]*Stricklin*, 594 F.3d at 1198-99.

provisions of the SPDs and other plan documents, the uniform consequences for the affected retirees, and the same historic evidence of defendants' disclosures and other actions with respect to the benefits plans.

Defendants contend that typicality does not exist by emphasizing that there are separate retiree benefit plans. In addition, Defendants rely on language from one plan and state that similar language does not appear in other SPDs for other retirees. Defendants contend, in short, that Plaintiffs have not identified a plan common to the entire class.

Defendants' assertions, however, do not defeat a finding of typicality. "[L]ike commonality, typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[18] The harm suffered by Plaintiffs as a result of Defendants' decision to reduce or eliminate medical, health, and life insurance benefits is typical of the harm suffered by the proposed class because all retirees were subject to the same decision and all retirees had their benefits reduced or eliminated due to Defendants' decision. "[V]ariations in plan language do not constitute an insurmountable obstacle to class certification."[19] Plaintiffs have stated a common harm due to Defendants' common decision. As such, typicality is satisfied.

### Commonality/Typicality as to Plaintiffs' State Age Discrimination Claims

Defendants also argue that Plaintiffs cannot demonstrate typicality or commonality with respect to Plaintiffs' state age discrimination claims (Counts V, VI, and VII) for two reasons: (1)

---

[18]*Stricklin*, 594 F.3d at 1199.

[19]*Smith v. United HealthCare Servs., Inc.*, 2002 WL 192565, at *4 (D. Minn. Feb. 5, 2002) (finding that although the defendant "accentuates the existence of thousands of different employer-sponsored health care benefits plans in 29 states, minor variations in the phrasing of the relevant plan language do not make the claims atypical with respect to the claims alleged in the Complaint.").

Plaintiffs lack standing and (2) individualized questions prevail over common issues.

Defendants state that Plaintiffs lack standing because they have not alleged that they suffered an injury-in-fact because they have not stated that they purchased or even attempted to purchase replacement life insurance.[20] Contending that Plaintiffs have offered no evidence that life insurance policies cost more for older retirees than younger retirees, Defendants state that Plaintiffs have only alleged a hypothetical or speculative harm for when they actually purchase such insurance.

In Plaintiffs' Third Amended Complaint, they allege that until 2007, Defendants provided employees and retirees with company-paid life insurance benefits which were equal to as much as $40,000 to a surviving spouse or other beneficiary. With respect to the VEBA subclass, the Complaint alleges that these retirees had been provided with a Grand-fathered Life Insurance benefit which provided a death benefit in the amount of two times their annual salary for the first five years of retirement or one times their annual salary after the first five years with coverage continuing for the remainder of the employee's life. On July 26, 2007, Defendant Embarq announced that it was eliminating the Grand-fathered Life Insurance benefit and all other life insurance benefits for retirees participating in the VEBA plan. Embarq also announced that it was reducing the level of other life insurance benefits, to a maximum of $10,000, an amount which was as little as 25% of the pre-existing life insurance benefits.

Here, it appears that Plaintiffs have suffered the injury or are under the threat of suffering the injury in the future. If a retiree would have died prior to the date the life insurance benefits were reduced or eliminated, he, or his beneficiary, would have received a greater benefit. Now, the

---

[20]Defendants also make this argument with respect to Plaintiffs' ADEA claim in that Defendants assert that Plaintiffs are not similarly situated because they have failed to allege an injury-in-fact. Plaintiffs do not address the standing argument in their class action briefing but address it in the collective action briefing. The parties' arguments are equally applicable to the ADEA and state law claims as they are premised on the same conduct.

retiree's life insurance benefit is capped at $10,000 or eliminated for the VEBA subclass. "[O]nly named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future."[21] The Court concludes that Plaintiffs have sufficiently alleged an injury-in-fact. The fact that Plaintiffs may or may not have attempted to purchase additional life insurance to make up for the reduction in benefits does not defeat typicality or commonality.

With respect to Defendants' second argument as to individualized questions, they assert that a whole host of questions will arise when determining the price of a life insurance policy. However, Plaintiffs have satisfied the typicality and commonality requirement by alleging that they were subject to one decision reducing or eliminating their benefits. Defendants claim that for Plaintiffs to succeed on their state law age discrimination claims, Plaintiffs must ultimately prove that they paid higher costs for replacement life insurance coverage because of their age and this requires various individualized factors that insurers consider when setting prices for life insurance policies.[22] At the class certification stage, the Court is not looking at the merits of the claim but instead considering whether Plaintiffs have satisfied class certification requirements. Here, it appears that Plaintiffs' claims are typical of the proposed class members as every proposed class member suffered the same harm in that their life insurance benefits either were eliminated or were reduced.

---

[21]*Stricklin*, 594 F.3d at 1197.

[22]In addition, the Court is uncertain as to whether Defendants have appropriately stated the requirement for Plaintiffs to succeed in establishing a state age discrimination claim.

### *Adequacy*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Two questions should be answered in determining adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[23]

Defendants contend that the fifteen named representatives will not adequately represent the proposed class because the proposed representatives retired from only 3 of at least 20 local operating companies. They state that Plaintiffs have not proposed an adequate class representative for the putative class members who retired under the plans sponsored by different companies or for retirees of the same company who retired under different plan documents. In addition, Defendants assert that Plaintiffs' statement that later proceedings may indicate that it would be appropriate to formally constitute subclasses is a tacit admission that the proposed representatives are inadequate.

 Defendants, however, have not identified how the proposed class representative's interest are in conflict or are antagonistic to the proposed class members. If other retirees from the same company retired under a different plan, the end result is the same. These retiree's benefits were reduced or eliminated by Defendants' decision, and the proposed representatives of the class seek restoration of these benefits to all class members. Several courts have determined that "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."[24] Here, Plaintiffs challenge Defendants' decision to reduce or eliminate medical,

---

[23]*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citations omitted).

[24]*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998); *see also Forbush*, 994 F.2d at 1106.

prescription, and life insurance benefits to all retirees. The Court cannot discern how the proposed class members interests are in conflict from the named class representatives. Should the Court determine at a later date that subclasses are appropriate, the Court may divide the class pursuant to Rule 23(c)(5).[25] Accordingly, Plaintiffs have satisfied the adequacy requirement.

### Rule 23(b) Requirements

In addition to meeting Rule 23(a) requirements, Plaintiffs must demonstrate that the class satisfies either Rule 23(b)(1), (2), or (3). In this case, Plaintiffs first seek to certify the class under Rule 23(b)(1) or (2). In the alternative, they seek to certify the class under Rule 23(b)(3). Certification under either section (1) or (2) provides for a mandatory class while certification under section (3) allows class members to opt out of the class.[26] "Parties may seek certification under 23(b)(1) in order to have uniformity of judgment on behalf of the entire proposed class, under Rule 23(b)(2) if they seek injunctive and declaratory relief, or under Rule 23(b)(3) if they seek monetary damages."[27] There are several issues that the parties have not addressed with respect to 23(b) requirements, and the Court will schedule a hearing for the parties to address these issues before deciding whether certification is appropriate.

### Rule 23(b)(1)

Plaintiffs assert that certification is appropriate under subsection (b)(1)(B). Rule 23(b)(1)(B) provides that a class action may be certified if "adjudications with respect to individual class

---

[25]Fed. R. Civ. P. 23(c)(5) provides: "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." *See also Sibley*, 254 F.R.D. at 674-75 (finding adequacy requirement was met and certifying class but recognizing that the Court could divide into subclasses at a later date if appropriate).

[26]*See* Fed. R. Civ. P. 23(c)(2)(B)(v).

[27]*Boos v. AT&T, Inc.*, 252 F.R.D. 319, 324 (W.D. Tex. 2008).

members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Certification under Rule 23(b)(1)(B) "cannot rest solely on an anticipated stare decisis effect."[28]

Plaintiffs assert that they seek declaratory, monetary and injunctive relief related to defendants' elimination and reduction of benefits. They state that the Court's determination of whether plaintiffs have a right to benefits, whether defendants breached their fiduciary duties, and whether defendants violated state age discrimination statutes would affect all plan participants and beneficiaries and could be dispositive of the interests of other affected participants by virtue of the stare decisis effects of the ruling.

Defendants argue that the quintessential claim appropriate for Rule 23(b)(1)(B) certification is one arising in a "limited fund" case, and this is not that type of case and therefore certification under 23(b)(1)(B) is inappropriate. In addition, they also state that a possible stare decisis effect is not enough to trigger the application of the rule.

Plaintiffs do not address the "limited fund" issue in their reply. The Court notes that there is some case law indicating that a limited fund is necessary for Rule 23(b)(1)(B) certification.[29] The Court, however, is not convinced that Rule 23(b)(1)(B) only applies to cases in which a "limited fund" exists. Specifically, there are several cases stating that some claims under ERISA are

---

[28]*In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1264 (10th Cir. 2004) (citing *Tilley v. TJX Cos.*, 345 F.3d 34, 42 (1st Cir. 2003)).

[29]*See, e.g., Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 318 (5th Cir. 2007) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)); *see also Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, 2007 WL 28243, at *7 (W.D. Okla. Jan. 3, 2007).

particularly well suited for Rule 23(b)(1) certification by virtue of the substantive law of ERISA.[30]

However, most cases seem to be addressing breach of fiduciary duty claims brought under §

502(a)(2). Plaintiffs bring their claim under § 502(a)(3). In addition, although Plaintiffs have

provided case law relating to certification under Rule 23(b)(1)(B), they have not directed the Court

to the appropriateness of certification under this provision with respect to Plaintiffs' claims *other*

*than* their breach of fiduciary duty claim.[31]

Accordingly, the Court will hold a hearing with respect to these issues before it decides

whether certification is appropriate.   The parties are expected to address the limited fund issue as

well as whether certification is proper under Rule 23(b)(1) for Plaintiffs' claims other than the

breach of fiduciary duty claim. With respect to Plaintiffs' breach of fiduciary duty claim, the parties

are expected to address the difference between a § 502(a)(2) and § 502(a)(3) claim.

### Rule 23(b)(2)

With respect to Rule 23(b)(2), there are two independent but related requirements.[32]  First,

Plaintiffs must demonstrate that Defendants' actions or inactions are based on grounds generally

applicable to all class members.[33]   Second, the requested final injunctive relief must be appropriate

for the class as a whole.[34]  "Rule 23(b)(2) demands a certain cohesiveness among class members

---

[30]*See In re Schering Plough Corp. ERISA* Litigation, 589 F.3d 585, 604-05 (3d Cir. 2009) (stating that "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." ); *see also In re Williams Companies ERISA Litig.*, 231 F.R.D. 416, 424-25 (N.D. Okla. 2005) (finding that certification under both Rule 23(b)(1)(A) and (B) appropriate for a breach of fiduciary duty claim).

[31]As discussed in more detail below, the Court has concerns with whether issue certification is appropriate as to Plaintiffs' breach of fiduciary duty claim.

[32]*Shook v. Bd. of Cnty. Comm'rs of County of El Paso (Shook II)*, 543 F.3d 597, 604 (10th Cir. 2008).

[33]*Id.*

[34]*Id.*

with respect to their injuries, the absence of which can preclude certification."[35]

The cohesiveness element has two aspects.[36] Plaintiffs must first demonstrate that the class is "sufficiently cohesive that any classwide injunctive relief can satisfy the limitations of Federal Rule Civil Procedure 65(d)-namely, the requirement that it "state its terms specifically; and describe in reasonable detail ... the act or acts restrained or required."[37] "Second, cohesiveness also requires that class members' injuries are 'sufficiently similar' that they can be remedied in a single injunction without differentiating between class members."[38] "Rule 23(b)(2)'s bottom line, therefore, demands at the class certification stage plaintiffs describe in reasonably particular detail the injunctive relief they seek such that the district court can at least conceive of an injunction that would satisfy Rule 65(d)'s requirements, as well as the requirements of Rule 23(b)(2)."[39]

Plaintiffs assert that they seek the same declaratory and injunctive relief based on the identical claim for benefits under the terms of defendants' benefit plans, and rely on defendants' common course of conduct that was uniformly applicable to plaintiffs and class members generally. They claim that monetary relief to remedy pre-judgment denials of benefits, which cannot be remedied through the declaratory and injunctive relief, will be ancillary to and follow from the class-wide relief based on common calculation criteria. Plaintiffs state that this is less significant than the value of injunctive relief requiring continued provision of benefits going forward.

---

[35]*Id.*

[36]*Stricklin*, 594 F.3d at 1199.

[37]*Shook II*, 543 F.3d at 604 (citing Fed. R. Civ. P. 65(d); *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004)).

[38]*Stricklin*, 594 F.3d at 1200.

[39]*Id.* (internal quotations and citations omitted).

Defendants argue that certification under Rule 23(b)(2) is inappropriate because multiple fact-sensitive issues will come into play on all of Plaintiffs' claims. Because of these individualized differences, Defendants contend that class certification is not appropriate under Rule 23(b)(2).

Plaintiffs do not set forth the form of the requested injunctive relief in their motion for class certification. As the Tenth Circuit has specifically noted, it is Plaintiffs' burden to demonstrate in reasonably particular detail the requested injunctive relief so the district court can conceive of an injunction satisfying Rule 65(d)'s requirements. Here, the Court has concerns with respect to the relief Plaintiffs request as they do not describe it with reasonable particularity in their motion for certification.[40]

In addition, with respect to the state age discrimination claims, it appears that Plaintiffs are seeking monetary damages. The Complaint states that Plaintiffs seek monetary damages for age discrimination and double the damages for willful discrimination.[41] "[I]f equitable relief is not uniformly applicable to the class, and thus time-consuming inquiry into individual circumstances or characteristics is required, little is gained from the case proceeding as a class action."[42] However, if monetary relief is incidental to the primary prayer of injunctive or declaratory relief, certification

---

[40]The Court notes that in Plaintiffs' Complaint, they seek a preliminary and permanent injunction reinstating and restoring to Plaintiffs and the members of the Class the subject medical, prescription drug and life insurance benefits and compelling Defendants to provide these benefits to them for the remainder of their lifetimes. Although this may be particular, they also seek reimbursement of the cost of any replacement insurance policies they obtained, reimbursement for any benefits they were denied, and reimbursement for any differences in the benefits they obtained.

[41]The Court is cognizant that Plaintiffs also seek injunctive relief in that they seek restoration of the life insurance benefits.

[42]*Vallario*, 554 F.3d at 1267.

under Rule 23(b)(2) may be proper.[43]

In this case, the Court has concerns with whether the relief requested is applicable to the class as a whole, the scope of the injunctive relief sought, and whether monetary damages are merely incidental to the equitable relief sought, particularly with respect to Plaintiffs' state age discrimination claims. As such, the Court will hold a hearing, and the parties are expected to address these issues before the Court decides whether certification is appropriate.

**Rule 23(b)(3)**

Certification is proper under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Factors relevant to this rule include: the class members' interest in individually controlling the prosecution of separate matters; the extent and nature of any litigation concerning the controversy already begun; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties in managing a class action.[44]

---

[43]*See In re Motor Fuel Temperature Sales Practices Litigation.*, - - - F.R.D. - - -, 2010 WL 2160889, at *11 (D. Kan. 2010) (citing *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001); *Allison v. Citgo Petrol. Corp.*, 151 F.3d 402, 411-15 (5th Cir. 1988)). The District of Kansas recently noted that the "[t]he Tenth Circuit has found that where plaintiffs principally seek monetary relief, district courts do not abuse their discretion by refusing to certify a class under Rule 23(b)(2)," but the Tenth Circuit has not addressed "whether certification under Rule 23(b)(2) is allowable where plaintiffs assert substantial claims for both injunctive and monetary relief." *Id.* (citations omitted). In this recent case, the District of Kansas adopted a hybrid approach which effectively certified the class for injunctive relief and stated that it would determine at a later time as to whether to certify the class for damages. *Id.*

[44]Fed. R. Civ. P. 23(b)(3)(A)-(D).

The predominance requirement under Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a).[45] To determine whether the question is individual or common, the nature of the evidence must be considered.[46] "If the proposed class members will need to present evidence that varies from member to member in order to make out a prima facie case, then it is an individual question. If, on the other hand, the same evidence will suffice for each member to make out a prima facie case, then it is a common question."[47]

With respect to Claims I and III, although it appears that Plaintiffs' claims would involve the same type of evidence, it appears that certification would be more proper under Fed. R. Civ. P. 23(b)(2) which would not necessitate an opt-out class. As noted above, the Court has concerns, however, with the scope of the injunctive relief requested, and the Court has questions with regard to the number of plans involved. With respect to the breach of fiduciary duty claim, it appears that individualized questions will predominate over common issues making manageability difficult. Finally, with regard to the state law age discrimination claims, Plaintiffs are also seeking to certify a collective action under the ADEA for the same conduct. Under 29 U.S.C. § 216(b), individuals must affirmatively opt-in the class. Under Rule 23(b)(3), individuals must affirmatively opt-out of the class.[48] The parties address this issue briefly in a footnote. There is conflicting case law as to the propriety of hybrid lawsuits that involve opt-out procedures under Rule 23(b) and opt-in

---

[45]*Monreal*, 367 F.3d at 1237 (citing *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

[46]*In re Urethane Antitrust Litigation*, 251 F.R.D. 629, 633 (D. Kan. 2008) (citations omitted).

[47]*Id.* at 633-34 (citations omitted).

[48]*See* Fed. R. Civ. P. 23(c)(2)(B)(v).

procedures under the FLSA.[49]  Accordingly, the Court reserves its ruling and will hear argument as to these issues at the upcoming hearing.

### Issue Certification as to Count II

Pursuant to Rule 23(c)(4), the Court may certify a class as to particular issues. The purpose of this rule is to promote judicial economy by litigating common issues of the class.[50]  "Certification is inappropriate if noncommon issues are inextricably entangled with common issues or . . . the noncommon issues are too unwieldy or predominant to be handled adequately on a class action basis."[51]  "[T]he relevant inquiry under Rule 23(c)(4)(A) is whether resolution of the particular common issues 'would materially advance the disposition of the litigation as a whole.'"[52]  "For particular issues to be certified pursuant to Rule 23(c)(4), the requirements of Rule 23(a) and (b) must be satisfied only with respect to those issues."[53]

Plaintiffs claim that the principal elements of their breach of fiduciary duty claim present common legal and factual questions that satisfy commonality.  Plaintiffs seek certification of the first three elements of their breach of fiduciary claim, as well as the fourth to the extent that a

---

[49]*See, e.g., Kuncl v. Int'l Bus. Machs. Corp.*, 660 F. Supp. 2d 1246, 1250-51 (N.D. Okla. 2009) (summarizing case law).  Although the *Kuncl* case discusses FLSA opt-in actions versus Rule 23 opt-out actions, it is also applicable here as Plaintiffs are proceeding as an opt-in ADEA class.  "Class actions under the ADEA are authorized by 29 U.S.C. § 626(b), which expressly borrows the opt-in class mechanism of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) (1994)." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

[50]*In re Motor Fuel Temperature*, 2010 WL 2160889, at *12; *see also Wyandotte Nation v. City of Kansas City, Kansas,* 2002 WL 31941041, at *5 (D. Kan. Dec. 2, 2002) (citation omitted).

[51]*Emig v. Am. Tobacco Co., Inc.*, 184 F.R.D. 379, 395 (D. Kan. 1998) (citation omitted) (addressing the former subsection).

[52]*Id.* (citing *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 632 (D. Kan. 1996)).

[53]*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, --- F.R.D. ---, 2010 WL 2593948, at *3 (S.D.N.Y. June 15, 2010) (citing 5 Moore's Fed. Prac. § 23.86[2]).

presumption of reliance is available. Defendants assert that Plaintiffs are attempting to circumvent Rule 23(a) and (b) by shoehorning this individualized analysis into Rule 23(c)(4).[54]

A breach of fiduciary duty claim requires: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation."[55] With respect to the first element, Plaintiffs assert that they will rely on Defendants' policies and practices to establish whether Defendants and their agents had actual or apparent authority to provide benefit information to employees.[56] Defendants contend that simply determining whether, and to what extent, any of the individuals who allegedly commented on retiree benefits were fiduciaries will involve an individualized inquiry. Here, Plaintiffs' complaint alleges that for at least thirty years, from at least 1977, if not earlier, until July 26, 2007, Defendants repeatedly misrepresented these benefits, both orally and in writing, to Plaintiffs and Class Members.

With respect to the second element, Plaintiffs assert that they will present common evidence of what Defendants did in providing benefits information and this involves the same common evidence as to whether Defendants adequately disclosed their alleged right to modify to terminate the retiree benefits. However, Plaintiffs have also alleged that affirmative misrepresentations were

---

[54]Although it initially appeared to the Court that Plaintiffs did not address all four requirements under Rule 23(a) or the provisions of either Rule 23(b)(1), (2), or (3) with respect to their breach of fiduciary duty claim, after reviewing Plaintiffs' motion, it appears that they have addressed all elements. If Defendants do not agree, they may bring this to the Court's attention during the hearing specifically stating what they contend has not been briefed.

[55]*Randles v. Galichia Med. Group, P.A.*, 2006 WL 3760251, at *13 (D. Kan. Dec. 18, 2006) (citing *Romero v. Allstate Corp.*, 404 F.3d 212, 226 (3d Cir. 2005)); *see also Kerber v. Qwest Group Life Ins. Plan*, 2009 WL 807443, at *5 (D. Colo. Mar. 25, 2009) (citations omitted) (stating that the Tenth Circuit has not stated a test for analyzing a breach of fiduciary duty for misrepresentations, but the Third Circuit has articulated a clear test).

[56]It appears to the Court that Plaintiffs are attempting to certify "elements" of a claim, rather than "issues," and questions whether this is appropriate.

made over a period of thirty years.

The Court has concerns about the commonality and typicality of several elements because there appear to be numerous individualized inquiries as to whether individuals were acting as fiduciaries and as to the representations made to more than 10,000 potential class members over a thirty-year time period. However, the Court will withhold its ruling on this issue until after the hearing has been held. Accordingly, Plaintiffs should address the issue as to the uniform nature of misrepresentations and/or omissions spanning thirty years. In addition, as noted above, Plaintiffs should address the appropriateness of certification of these issues under Fed. R. Civ. P. 23(b)(1), (2), or (3).

Accordingly, the Court finds that Plaintiffs have satisfied Rule 23(a) with respect to claims I, III, V, VI, and VII. The Court, however, takes under advisement whether to certify the class because of the issues listed above. At the hearing, the parties are expected to address the applicability of Rule 23(b). With respect to claim II, the Court also takes under advisement as to whether to certify certain elements of Plaintiffs' breach of fiduciary duty claim because of the issues listed above. The parties are expected to address the commonality and typicality of these issues and certification under Fed. R. Civ. P. 23(b).

### B. Plaintiff's Motion to Certify Collective Action (Doc. 129)

Section 216(b) of the Fair Labor Standards Act of 1938 provides for an opt-in class action where the complaining employees are "similarly situated."[57] The Tenth Circuit has approved of a two-step approach in determining whether plaintiffs are "similarly situated" for purposes of §

---

[57]29 U.S.C. § 216(b).

216(b).[58]   Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated."[59] This is a more lenient standard and "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[60] Because the first step is more lenient, this generally results in conditional certification of a collective class.[61]

At the close of discovery, and usually prompted by a motion to decertify, the court revisits the class certification issue and utilizes a more strict standard to determine whether the plaintiffs are "similarly situated."[62] At this stage, the court is required to review several factors which include: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the ADEA before instituting suit."[63]

Plaintiffs contend that all members of the proposed class were affected by Defendants' July 26, 2007 decision in which Defendants terminated or reduced Plaintiffs' company-paid life insurance benefits. Defendants allege that Plaintiffs have failed to allege a concrete injury and, therefore, lack standing to bring their ADEA claim on behalf of a class. In addition, Defendants

---

[58]*See Thiessen*, 267 F.3d at 1105.

[59]*Id.* at 1102.

[60]*Id.* (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

[61]*Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007).

[62]*Id.*; *see also Thiessen*, 267 F.3d at 1102-03.

[63]*Thiessen*, 267 F.3d at 1103 (citation omitted).

contend that Plaintiffs are not challenging Defendants' decision but rather are challenging a series of individual decisions made by insurers in pricing Plaintiffs' replacement life insurance policies.

Defendants' argument is without merit. As noted above with respect to the state age discrimination claims, all individuals were subject to one decision, i.e., the decision to reduce or eliminate their life insurance benefits.[64] In addition, the injury was suffered when the benefits were reduced or terminated. At the notice stage of certification, the Court need only consider the substantial allegations of the complaint and any supporting affidavits or declarations.[65] Here, all retirees were subject to a single decision that affected their rights to benefits. As such, the Court finds that Plaintiffs have sufficiently alleged that they are similarly situated.

Plaintiffs' class definition in their Complaint, however, is inappropriate because this Court previously dismissed Plaintiffs' medical and prescription drug benefit claims under the ADEA. At this point, only the life insurance benefit claim under the ADEA remains. At the hearing, the parties should discuss the appropriate class definition for the notice.

The parties did not provide the text of the notice because they stated that they would like to have the benefit of the Court's rulings on the Motion for Approval of the Collective Action and the class certification motion. Although the Court has not conditionally certified the collective action as of this date due to the lack of an appropriate class definition, the Court will provide guidance as to some additional issues. The Court will not equitably toll Plaintiffs' claims, and although Plaintiffs

---

[64]Although the parties disagree about whether Plaintiffs have asserted a pattern or practice claim and the applicability of a pattern and practice claim with respect to disparate treatment or disparate impact claims, the Court will not address these contentions. Plaintiffs have sufficiently alleged they were subject to one decision and that they are similarly situated because that one decision adversely affected their right to company-paid life insurance benefits.

[65]*Thiessen*, 267 F.3d at 1102.

seek broad information from Defendants, the Court will only direct Defendants to provide names and last known addresses of the proposed class in a readily accessible form.

**IT IS THEREFORE ORDERED** this 28th day of July, 2010 that Plaintiffs' Motion to Certify Class (Doc. 127) is hereby taken under advisement.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Certify Collective Action (Doc. 129) is taken under advisement.

The Court schedules a hearing for September 8, 2010 at 1:00 p.m. in Courtroom 440 in the Kansas City, Kansas Federal Courthouse.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE