# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WILLIAM DOUGLAS FULGHUM, et al., individually and on behalf of all others similarly situated, *Plaintiffs,* vs. EMBARQ CORPORATION, et al., *Defendants.* | Case No. 07-2602-EFM |

## MEMORANDUM AND ORDER

Plaintiffs, on behalf of themselves and a certified class, filed this action alleging that Defendants' elimination of retirees' medical and life insurance benefits violated the Employee Retirement Income Security Act of 1974 ("ERISA"). The case has been proceeding for several years, and there are currently four pending summary judgment motions before the Court. These motions relate to two named Plaintiffs' contractual vesting claims and to approximately 3,200 class members' contractual vesting claims. Because the Court finds that the language in the relevant documents does not establish lifetime benefits, the Court grants Defendants' motions for summary judgment (Docs. 488, 495) and denies Plaintiffs' motions for summary judgment (Docs. 502, 505).

# I.    Procedural Background[1]

The Court will only set forth a brief procedural background.[2] Seventeen named Plaintiffs brought this lawsuit, on behalf of themselves and a class of approximately 15,000 individuals. Plaintiffs assert, in their first and third claims,[3] that the summary plan descriptions ("SPDs") in effect when they retired give them a contractual right to vested health and life insurance benefits, and Defendants' modification or elimination of their health care and life insurance benefits violates ERISA.  Defendants previously sought summary judgment on these contractual vesting claims for the seventeen named Plaintiffs, as well as approximately 11,000 class members.

On February 14, 2013, this Court issued an Order granting in part and denying in part Defendants' motion.[4]  Specifically, the Court granted Defendants' motion with regard to fifteen of the seventeen named Plaintiffs and as to all of the class members for which Defendants sought summary judgment.  The Court found that the language in the SPDs at issue did not provide Plaintiffs with lifetime health or life insurance benefits.  With regard to two of the named Plaintiffs, James Britt and Donald Clark, the Court found that there were issues of fact

---

[1] The Court will set forth the applicable facts in sections below.

[2] This case has been on file since December 2007 and thus has a significant history.  This Court's opinion in *Fulghum v. Embarq Corp. (Fulghum I)*, 938 F. Supp. 2d 1090 (D. Kan. 2013) (affirmed in part and reversed in part by *Fulghum v. Embarq Corp. (Fulghum II)*, --- F.3d ---, 2015 WL 1905798 (10th Cir. Apr. 27, 2015)) explains the history of the case in more detail.

[3] These are the only two claims relevant in this Order. Plaintiffs, however, brought five other claims.  In Plaintiffs' second claim, Plaintiffs contend that Defendants breached their fiduciary duty by misrepresenting the terms of the plans to them.  This Court previously found that fifteen of the seventeen named Plaintiffs' breach of fiduciary duty claim was barred by the statute of repose.  The Tenth Circuit disagreed and reversed this Court's ruling on that issue.  Plaintiffs' breach of fiduciary duty claim is not at issue in this Order.
Plaintiffs also brought four additional claims pursuant to the ADEA and state age discrimination laws.  This Court granted summary judgment in favor of Defendants on these claims, and the Tenth Circuit affirmed this decision.  Thus, these claims are no longer at issue in the case.

[4] *Fulghum I*, 938 F. Supp. 2d at 1134.

precluding summary judgment.[5]  In addition, Defendants did not seek summary judgment with regard to all of the class members.  Accordingly, several thousand class members' contractual vesting claims remained active in the case.

Plaintiffs appealed this Court's decision to the Tenth Circuit, pursuant to Federal Rule of Civil Procedure 54(b). On April 27, 2015, the Tenth Circuit issued its opinion on Plaintiffs' Rule 54(b) appeal.[6] In this opinion, the circuit made several rulings regarding Plaintiffs' contractual vesting claims. First, the circuit found that this Court did not err in granting summary judgment with regard to the approximate thirty SPDs that were before the Court.[7] The circuit held that none of the SPDs at issue contained clear and express language promising lifetime health or life insurance benefits.[8] The circuit reversed, however, a portion of this Court's order relating to the contractual vesting claims. The circuit found that it was error to grant summary judgment in full as to class members who potentially had a claim for vested benefits on SPDs that were not before the Court.[9]  In other words, if a class member is covered by multiple SPDs and Defendants sought summary judgment on only one of those SPDs, it was error for this Court to grant summary judgment as to that particular class member's claim to vested benefits because their

---

[5] The Court will discuss this matter in more detail below in Section III.

[6] *Fulghum II*, 2015 WL 1905798. The Tenth Circuit originally issued an opinion on February 24, 2015. *Fulghum v. Embarq Corp.*, 778 F.3d 1147 (10th Cir. 2015) (amended and superseded by *Fulghum II*, 2015 WL 1905798). Both parties filed a Petition for Rehearing and Rehearing En Banc. The circuit granted the request for panel rehearing to the extent of the amendments in the revised April 27, 2015, opinion.  But the circuit denied the parties' request for rehearing en banc.

[7] 2015 WL 1905798 at **3-8.  There were four groups of SPDs at issue in the appeal to the Tenth Circuit. The SPDs were divided into different groups based on the similarity of the language in the SPDs.  The Court's ruling on one group of SPDs (two individual SPDs) was not at issue in this appeal.

[8] *Id.*

[9] *Id*. at *10.

claim for contractual vesting may arise under a different SPD. The Tenth Circuit's opinion guides the issues currently before the Court.

While the case was on appeal, this Court allowed briefing on several issues related to the contractual vesting claims still before the Court.   There are currently four motions at issue. Defendants filed a motion for summary judgment on the unadjudicated class members' contractual vesting claims (Doc. 488).   Plaintiffs also bring a cross-motion for summary judgment on these same class members' contractual vesting claims (Doc. 502).  Defendants seek summary judgment relating to the contractual vesting claims of named Plaintiffs Clark and Britt[10] (Doc. 495).  Plaintiffs also seek summary judgment on these two named Plaintiffs' claims (Doc. 505). The Court will first address the parties' motions relating to the unadjudicated class members' contractual vesting claims. The Court will then address the parties' motions regarding the two named Plaintiffs' contractual vesting claim.


**II.     Defendants' Motion for Summary Judgment on the Unadjudicated Contractual Vesting Claims of Additional Unionized Members and Plaintiffs' Cross-Motion for Summary Judgment on Liability on Contractual Vesting Claims of Unionized Class Members  (Docs. 488, 502)**

Defendants contend that none of the class members can establish a contractual vesting claim. They argue that the language in the relevant documents does not clearly and expressly state that Defendants promised lifetime medical or life insurance benefits. Plaintiffs disagree and assert that there is language promising lifetime medical and life insurance benefits to the retiree class members.

---

[10] Plaintiff Britt died in 2013. His daughter, Carol Nelson, has been substituted as his representative. For purposes of this Order, however, the Court will continue to refer to the plaintiff as named Plaintiff Britt.

### A.  Summary Judgment Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[11] The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[12]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[13]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[14]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[15]

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[16]  Each party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[17]  "When the parties file cross motions for summary judgment, [the court is] entitled to assume that no evidence needs to

---

[11]  Fed. R. Civ. P. 56(a).

[12]  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[13]  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[14]  *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[15]  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[16]  *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[17]  *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381-82 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[18]

### B.  ERISA Contractual Vesting Law

The plans at issue in this case are welfare benefit plans.[19] Because welfare benefit plans are not governed by ERISA's minimum vesting standard, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."[20] The exception to this rule is if an employer or other plan sponsor contractually agrees to provide vested benefits.[21]  Federal common law governs the interpretation of an ERISA plan.[22]  In determining whether a welfare benefit plan provides for vested benefits, the Court applies general principles of contract construction by looking at the contract language and considering the parties' intent.[23]  A plaintiff must identify "clear and express language" to establish that his employer promised vested benefits.[24]  "[A] promise to provide vested benefits must be incorporated . . . into the formal written ERISA plan.  SPDs are considered part of the ERISA plan documents."[25]

---

[18] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[19] 29 U.S.C. § 1002(1).

[20] *M & G Polymers USA, LLC v. Tackett*, --- U.S. ---, 135 S. Ct. 926, 933 (2015) (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)).

[21] *Deboard v. Sunshine Mining & Ref. Co.*, 208 F.3d 1228, 1240 (10th Cir. 2000).

[22] *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1237 (10th Cir. 2012).

[23] *Deboard*, 208 F.3d at 1240.

[24] *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1513 (10th Cir. 1996), *abrogated on other grounds by CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011).

[25] *Fulghum II*, 2015 WL 1905798 at *2 (citing *Chiles*, 95 F.3d at 1511).

-6-

### C.  Relevant Documents in this Case

The Court must first discuss the relevant documents in this case because the parties are in disagreement, and the Court's determination limits the evidence relevant to Plaintiffs' claims for vested benefits. Defendants assert that Plaintiffs cannot rely upon collective bargaining agreements ("CBAs") because Plaintiffs have never asserted that their claim for vested benefits arise from the language in the CBAs. In addition, Defendants contend that the Pretrial Order, the document currently governing the claims in this case, does not include a claim for vested benefits under the CBAs. Instead, the Pretrial Order states that the CBAs constitute extrinsic evidence. Plaintiffs disagree and assert that they did not waive any ERISA claims based on the CBAs. They contend that Defendants' actions demonstrate that there was no waiver because Defendants have stated that certain Plaintiffs identified the CBAs as relevant to their claim.

As noted above, this Court's decision is guided by the Tenth Circuit's recently issued opinion.  In that opinion, the circuit stated, in a footnote, that Plaintiffs waived any claim to vested benefits under the terms of various CBAs because Plaintiffs stated in the Pretrial Order that their right to vested benefits arose pursuant to the terms of various SPDs.[26]   Indeed, the Pretrial Order states that "defendants violated ERISA by failing to issue SPDs which prominently, clearly, and accurately disclosed the possibility of amendment or termination of the promised benefit during retirement that could be understood by the average plan participant," and that CBAs constitute " 'extrinsic evidence' which can be used to confirm the lifetime nature of the benefits even if SPDs themselves are found to be ambiguous."[27] Thus, Plaintiffs did not include a claim for vested benefits under the language in the CBAs in the Pretrial Order. As

---

[26] *Fulghum II*, 2015 WL 1905798 at *10, n.15.

[27] Pretrial Order, Doc. 295, pp. 20-21.

noted by the circuit, "Plaintiffs have waived any [claim for benefits based upon the terms of CBAs] by stating in the Pretrial Order that their right to benefits arose pursuant to the terms of various SPDs and that the CBAs were merely extrinsic evidence."[28]   Accordingly, Plaintiffs can only rely upon SPDs for their claim of vested benefits.

There is, however, an important caveat here.  The Tenth Circuit, in addressing the SPDs on appeal, did not have any SPDs with language referencing or speaking of CBAs.[29]  Multiple SPDs at issue in this round of summary judgment briefing include language specifically referencing CBAs. For example, several SPDs state that the plan is maintained pursuant to a CBA, or the SPDs include a reservations of rights ("ROR") clause stating that the plan can be amended, subject to any applicable CBA.  This specific language in the SPDs would make it appear that language in a CBA is relevant.  However, as will be discussed in more detail below, this CBA language cannot be considered in isolation and can only be considered *if a particular SPD references a CBA*.   A CBA, standing alone, is irrelevant to Plaintiffs' claims for vested benefits because Plaintiffs' claim for vested benefits arise from the terms of the SPDs—as Plaintiffs specifically stated in the Pretrial Order. Thus, a CBA is only relevant if a SPD

---

[28] *Fulghum II*, 2015 WL 1905798 at *10, n.15 (citing *Wilson v. Muckala*, 203 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims . . . not included in the pretrial order are waived even if they appeared in the complaint . . . .")).

[29] This Court previously considered one group of SPDs (16 and 17) that included language specifically referencing a CBA. This SPD only related to named Plaintiff Clark. And this SPD was not at issue in Plaintiffs' Rule 54(b) appeal to the Tenth Circuit. Thus, the circuit did not consider this type of language.
To the extent that any of the other SPDs on appeal included any language referencing CBAs or the applicability of a CBA to a particular SPD, it does not appear that Plaintiffs raised any substantive argument about this fact.  Thus, the circuit did not address any SPD language relating to CBAs.

specifically references or identifies an applicable CBA.[30] With these principles in mind, the Court will consider the parties' motions for summary judgment.

### D.  The SPDs

There are seventy-one additional SPDs that Defendants have brought to the attention of the Court and for which they seek summary judgment.  In Defendants' previous summary judgment motion, Defendants divided the SPDs into different groups based on the similarity of the language in the SPDs.  Defendants also proceed in this manner with their current Motion for Summary Judgment.[31]  The Court will thus address the language in four groups of SPDs.

#### 1.  *The Fifth Group of SPDs (SPDs 33 through 49)*[32]

This group of seventeen SPDs contains medical SPDs (33 through 40), prescription drug SPDs (41 and 42), medical and life insurance SPDs (43 through 47), and life insurance SPDs (48 and 49). Class members identified in Exhibits A-73 through A-89 retired while these SPDs were in effect.[33] The language in this fifth group of SPDs is substantially similar in that each contains a broad ROR clause.  All of the ROR clauses, with the exception of one, are similar in that they state that the company hopes or expects to continue the plan indefinitely or for the foreseeable

---

[30] In addition, as will be discussed in more detail below, the language in the CBA is only relevant if Plaintiffs specifically direct the Court to a particular SPD (and language in that SPD) referencing a CBA. Plaintiffs frequently fail to direct the Court to the relevant evidence.

[31] Plaintiffs' cross-motion also considered groups of SPDs. The parties provided a stipulated chart of the SPDs and the relevant language.

[32] Defendants start numbering their groups of SPDs at 5 because the Court's February 14, 2013, Order already addressed and ruled upon four groups of SPDs (Groups 1 through 4).  Defendants compare the language in the current groups of SPDs (Groups 5 through 8) with the language in the previous groups of SPDs (Groups 1 through 4). The comparison of groups was not necessarily helpful as the groups sometimes had different language. For the most part, however, the Tenth Circuit addressed similar language, and the Court relies upon the Tenth Circuit's opinion for guidance.

[33] There appear to be approximately 863 class members that rely on SPDs 33 through 49.

future but they reserve the right to amend, discontinue, or terminate the plan.[34] Ten of the SPDs also contain provisions that coverage will terminate if the benefit plan terminates. Three of the seventeen SPDs contain the statement that "your coverage under the Retiree Medical Plan ends when you die," and one SPD addressing life insurance states that "coverage ends on the date of your death." Approximately seven of the SPDs provide that benefits "will continue" or "will be continued" at retirement. Several life insurance SPDs in this group provides that the benefit amount "will be reduced by 50 percent" on the retiree's fifth anniversary.

Defendants contend that this fifth group of SPDs contains language that the Court previously considered and determined did not establish vested benefits. Plaintiffs recognize the Court's previous determination and state that they preserve their arguments on the SPDs while the case is on appeal. Thus, Plaintiffs largely concede that their SPD arguments fail if the Tenth Circuit affirms this Court's February 14, 2013, Order.[35] As noted above, the Tenth Circuit affirmed this Court's ruling regarding the SPDs the Court previously considered. Accordingly, the Court will rely upon the Tenth Circuit's decision when making a determination here.

There are three factors to consider with this group of SPDs. Plaintiffs contend that the broad ROR clause is without effect because some of the SPDs include language that coverage ends upon death. Next, Plaintiffs argue that the language in the SPDs stating that benefits will be continued at retirement indicates the lifetime nature of benefits. Finally, Plaintiffs reference

---

[34] SPD 35 is the only anomaly. This SPD includes an ROR clause that states: "The Company expects to continue the Plan for the foreseeable future. However, the Company reserves the right to amend, discontinue or terminate the Plan and/or Plan benefits, subject to the requirements of any applicable collective bargaining agreement." *See* Doc. 490-2, p. 5. The effect of this clause will be discussed below in Section II(D)(3)(c)(2) and note 69.

[35] Plaintiffs spend two pages of their fifty-five page brief discussing the language in the SPDs. Plaintiffs primarily brief the issue by relying on the language in various CBAs in an attempt to establish a right to vested benefits. As noted above, Plaintiffs cannot rely upon the CBAs in isolation.

CBA language in the SPDs and contend that the CBAs are the relevant documents.  The Court will address each contention.

### a.  ROR clauses

This fifth group of SPDs contains broad ROR clauses allowing the company to terminate the plan for any reason. Ten of these SPDs also include termination provisions.[36]  Although several of these health care SPDs include language that coverage ends upon death, the Tenth Circuit found that the clause stating that coverage ends upon death "convey[s] the self-evident message that a retiree's medical coverage terminates when she dies."[37]  The Tenth Circuit concluded that even though a medical SPD includes such a provision, read in context, the SPDs do not clearly and expressly state that health benefits are vested and thus cannot "reasonably be interpreted as a promise of lifetime benefits."[38]  With regard to life insurance SPDs that include a clause that coverage ends upon death, the Tenth Circuit concluded that reading the SPD, in its entirety and giving effect to all of its provisions, "it unambiguously explains to retirees that they will continue to receive life insurance benefits unless the terms of the plan are changed prior to their death."[39]  The Tenth Circuit agreed with numerous other circuits in concluding that "plan language that arguably promises lifetime benefits can be reconciled with an ROR clause if the promise is interpreted as a qualified one, subject to the employer's reserved right to amend or terminate those benefits."[40]  Thus, with regard to the group of SPDs currently before the Court,

---

[36] A more in-depth discussion regarding the effect of termination provisions is found below in Section II(D)(2)(b).

[37] *Fulghum II*, 2015 WL 1905798 at *4.

[38] *Id.*

[39] *Id.*

[40] *Id.* (citations omitted).

even though a few of the SPDs state that coverage ends upon death,[41] these SPDs also include a broad ROR provision allowing for termination of the plan.   The inclusion of this ROR provision is indicative that benefits were not promised for life.

### b.   "Will be" and "will continue" language

Plaintiffs contend that some additional language is indicative of lifetime benefits. Six of the SPDs in this group state that benefits "will continue," are "continued," or "will be continued" at retirement. The Tenth Circuit, however, noted that this type of language "does not clearly and expressly promise lifetime benefits because it does not state that benefits will continue, unaltered, until the retiree's death."[42] The circuit's reasoning is applicable here because the language is similar in that it does not state that the individual will be covered indefinitely. In addition, when the circuit considered this "will continue" language, most of the SPDs in that group (Group 3) did *not* contain broad ROR clauses. One of the SPDs, however, did contain a broad ROR clause, and the circuit stated "[t]his clause leaves no doubt the plan could be amended or terminated at any time."[43]   In this case, all of the SPDs in this fifth group stating that benefits "will continue" also contain a ROR provision.  The inclusion of a broad ROR provision further demonstrates that there was no promise of lifetime benefits.

Several of the SPDs in this fifth group also contain language stating that upon an individual's retirement date that benefits will be reduced by fifty percent. In addressing this type of provision, the Tenth Circuit stated that "[n]othing in the provision . . . could reasonably be

---

[41] The Court notes that most of the SPDs at issue in this group (fourteen of the seventeen) do *not* contain the language that coverage ends upon death.

[42] *Fulghum II*, 2015 WL 1905798 at *6.

[43] *Id.* at *7.

construed as a promise of lifetime benefits. The section to which Plaintiffs refer provides plan participants with information regarding the *amount* of the life insurance benefit. It, in no way, speaks to the *duration* of the benefit.[44]  Thus, this language is not indicative of lifetime benefits.

### c.   CBA language

Plaintiffs contend that their benefits are defined by certain CBAs, and the CBAs are the controlling documents. But, as noted above, the CBAs are not the controlling documents because Plaintiffs waived CBA-vesting claims, and Plaintiffs cannot rely exclusively upon a CBA to establish vested benefits. The CBAs are *only relevant* if a *particular SPD* specifically references a CBA. The Court notes that several of these SPDs reference CBAs because there is language stating that the plan "is maintained pursuant to CBAs."[45]  Plaintiffs, however, fail to direct the Court to any particular CBA linked to any particular SPD.  Instead, Plaintiffs simply discuss language in numerous CBAs without regard to the SPDs.  The discussion of quoted language in CBAs, marooned in isolation from any SPD, is unhelpful and irrelevant to Plaintiffs' claim for contractually vested benefits. Thus, although several SPDs state that the plan is maintained pursuant to a CBA, the Court is unaware of the relevant CBAs and whether any language in the relevant CBAs promises lifetime benefits.[46]  Thus, Plaintiffs fail in their response to Defendants'

---

[44] *Id.* at *5.

[45] SPD 38, Doc. 490-2, p. 8.  The Court only specifically references one SPD's language, but several SPDs contain either identical or similar language referencing CBAs.  The difference in language is not material.

Some of the SPDs also include some innocuous language stating that participants in the plans are entitled to "examine without charge . . . plan documents, collective bargaining agreements and copies of documents filed by the plan with the U.S. Department of Labor, such as annual reports and plan descriptions." *See* SPD 46, Doc. 490-2, p. 19.  Again, the Court only references one SPD's terminology. The language in other SPDs is not materially different. This language does not demonstrate in any way that a CBA may be relevant in determining a claim for vested benefits.

[46] As an example of what Plaintiffs would need to do to demonstrate contractual vesting (or at least a question of fact), Plaintiffs would need to state to the Court that SPD X is maintained pursuant to CBA Y.  And then

Motion for Summary Judgment to set forth specific facts demonstrating genuine issues for trial. With regard to their Cross-Motion for Summary Judgment, they fail to direct the Court to relevant and pertinent language to their claim.

### d. Conclusion

In sum, all of the SPDs, with the exception of one that will be discussed below,[47] in this fifth group contain a broad ROR provision. The inclusion of a broad ROR is indicative that the company did not intend to provide lifetime benefits. The SPDs containing language that coverage ends upon death have to be reconciled with the rest of the language in the SPDs providing that the plan can be terminated at any time. And the SPDs containing language that states insurance "will be continued" at retirement or "will be reduced by 50%" must also be read as a whole. Reading the SPDs as a whole, the SPDs do not affirmatively promise lifetime benefits. Instead, the language allows the company to amend or terminate the plan at any time, and there is no clear and express language establishing vested benefits. To the extent that several of the SPDs reference CBAs, Plaintiffs do not direct the Court to any language in a particular CBA relating to these SPDs. Thus, Defendants are entitled to summary judgment with regard to the class members identified in Exhibits A-73 through A-89 who base their contractual vesting claim on SPDs 33 through 49.[48] Conversely, the Court denies Plaintiffs' motion for summary

---

Plaintiffs would need to direct the Court to language in CBA Y, in connection with SPD X, that is indicative of contractual vesting language. Plaintiffs wholly fail to do so.

[47] SPD 35, with a ROR referencing a CBA, will be discussed below in Section II(D)(3)(c)(2) and note 69.

[48] With regard to SPDs 33 through 49, Defendants state that one of the class members identified in Exhibits A-73 through A-89 already had summary judgment entered against her on her claim for such benefits and thus cannot bring a claim on one of these SPDs. As noted above, the Tenth Circuit found that it was error for this Court to grant summary judgment in full as to a class member who bases her claim for vested benefits on multiple SPDs. Thus, this particular class member would still have a claim for benefits on these SPDs. Her claim for vested benefits on one of these SPDs (33 through 49), however, is now extinguished. To the extent that this particular class member relies upon another SPD that has not been presented to the Court, her claim would remain.

judgment because Plaintiffs do not establish that the language in these SPDs provide for vested benefits.

### 2.  *The Sixth Group of SPDs (50 through 73)*

This group of twenty-four SPDs contains life insurance SPDs (50 through 61), medical and life insurance SPDs (62 through 66), and medical SPDs (67 through 73). Class members identified in Exhibits A-90 through A-113 retired while these SPDs were in effect.[49] The language in this sixth group of SPDs is substantially similar in that each contains one or more termination provisions stating that insurance under the Group Policy will cease, end, or terminate when the Group Policy terminates. One of these SPDs also includes a ROR clause providing for termination for any reason. Another SPD contains a ROR clause premised on business necessity. Numerous SPDs in this group relating to life insurance provide that upon retirement, life insurance "will be" or "shall be" a specified amount or states that the benefits "will be" reduced by a specified amount. Several other SPDs provide that benefits "will be continued" or state that the individual "will be insured" after retirement.

Plaintiffs again assert three broad contentions as to why Defendants contractually promised them lifetime benefits. The first argument is that the "will be" language is indicative of lifetime benefits, especially because there is no ROR provision in the SPDs.  Plaintiffs next contend that the termination provisions do not allow termination of the plan but only allow termination of the policy. Finally, Plaintiffs reference CBA language again and contend that the CBAs contractually provide lifetime health or life insurance benefits. The Court will address each contention.

---

[49] There appear to be approximately 1,037 class members that rely on SPDs 50 through 73.

### a. *"Will be" language and the absence of an ROR provision*

Plaintiffs contend that the language stating that life insurance "will be," "shall be," and "will be continued" is indicative of vested benefits. Plaintiffs also assert that the absence of ROR clause in these SPDs demonstrates the promise of lifetime benefits.[50] The Tenth Circuit rejected both of Plaintiffs' arguments.

As noted above in Section II(D)(1)(b), with regard to SPD language stating that upon retirement, life insurance "will be" a certain amount or "will be" reduced by a specified amount, these provisions are addressing the dollar amount of the insurance and not the duration of the insurance. As stated by the Tenth Circuit, "[n]othing in the provision . . . could reasonably be construed as a promise of lifetime benefits."[51]  And with regard to the language that states benefits "will be continued" or that individuals "will be insured" after retirement, the Tenth Circuit noted that this type of language "does not clearly and expressly promise lifetime benefits because it does not state that benefits will continue, unaltered, until the retiree's death."[52] Simply put, the language "will be continued" or "will be insured" after retirement in this seventh group of SPDs does not indicate lifetime benefits, particularly because the Court must consider all of the language in the SPDs. Furthermore, the absence of an express ROR provision does not indicate the promise of lifetime benefits because as will be discussed in the next paragraph, every SPD at issue in this group contains a termination provision.

---

[50] The Court notes that there are two SPDs in this group that do contain a ROR clause.

[51] *Fulghum II*, 2015 WL 1905798, at *5.

[52] *Id.* at *6.

### b.   *Termination provisions*

Each of these SPDs contains a provision stating that insurance under the Group Policy will cease, end, or terminate when the Group Policy terminates.   Plaintiffs assert that this provision only allows Defendants to terminate the policies, not the plans. As the Tenth Circuit noted, however, "under the facts presented here, there is no distinction between the policies and the plans and, thus, termination of the policies would necessarily terminate the plans."[53]   With regard to the SPDs at issue in this sixth group, Plaintiffs do not provide this Court with any evidence demonstrating a distinction between the policies or plans.[54] Accordingly, the termination provisions in these SPDs informed Plaintiffs that their benefits could be terminated and were not lifelong benefits. Thus, Plaintiffs do not identify any clear and express language establishing vested benefits.

### c.   *CBA language*

Several of these SPDs state that the plan "is maintained pursuant to CBAs."[55] As discussed above, Plaintiffs do not identify any specific CBA relating to a particular SPD.   The only exception is with regard to named Plaintiff Clark, who is covered by SPD 51. The Court therefore notes that a brief discussion regarding SPD 51 is warranted here.

SPD 51 states that "[t]his plan, as applicable to union represented employees, is maintained pursuant to a collective bargaining agreement.  Benefits under the plan for employees

---

[53] *Id.*

[54] As noted above, Plaintiffs primarily assert their previous arguments and recognize that these arguments will fail if the Tenth Circuit disagreed with those arguments.

[55] Several SPDs state that a plan participant may examine CBAs. As noted above, this language is innocuous and does not demonstrate in any way that a CBA may be relevant in determining a claim for vested benefits.

covered under the bargaining agreement will depend on the terms of the agreement."[56]   This language makes it appear that a CBA is relevant to an individual's claim for vested benefits, provided that the individual is a union represented employee. The parties identify named Plaintiff Clark as a union employee falling under SPD 51 and identify CBA 1 as the applicable CBA. Defendants identify four other class members that fall under this SPD.[57] With regard to these four class members that fall under SPD 51, there are no representations to the Court as to the applicability of any specific CBA related to the four class members.[58] Thus, with regard to the four class members identified as falling under SPD 51, the Court will only consider the language in SPD 51 (and not language in the CBAs because Plaintiffs failed to identify any relevant CBAs related to SPD 51).   As to named Plaintiff Clark, however, Plaintiffs do identify the relevant CBA, and his claim will be considered below in Section III(B).

---

[56] SPD 51, Doc. 490-2, p. 25.

[57] The Court notes that the current SPD 51 is apparently an SPD previously identified in the first round of summary judgment motions as SPD 17.  In the Court's February 14, 2013, Order, the Court considered SPD 17 as it related to named Plaintiff Clark's claim.  No other individuals were identified as being covered by SPD 17. After (or during the briefing of) the first round of summary judgment motions, Defendants' mapping identified four potential class members covered by SPD 17. This information about these potential class members being covered by SPD 51 (previously identified as SPD 17) is being presented to the Court for the first time with this round of motions.

[58] It does not appear that any of these four individuals fall under the same CBA as named Plaintiff Clark. As noted above, Plaintiffs fail to direct the Court to specific evidence relevant to their claims. It is Plaintiffs' responsibility to tie the facts to their legal contention.  *See KM Mentor, LLC v. Knowledge Mgmt. Prf'l Soc'y, Inc.*, 712 F. Supp. 2d 1222, 1230 (D. Kan. 2010).  "Without a specific reference, '[the Court] will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.' " *Id.* (quoting *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)). *See also Certain Underwriters at Lloyd's London v. Garmin Int'l, Inc.*, 781 F.3d 1226, 1230 (10th Cir. 2015) (finding that the district court did not abuse its discretion when it disregarded evidence when it was not submitted in accordance with the local procedural rules).

     The number of documents in this case is voluminous. The number of class members remaining in this case is also large. It is not the Court's duty to determine which CBA relates to which SPD and to which class member. The parties provided mapping to the Court as to the individuals covered under the seventy-one SPDs at issue.  The parties also provided mapping as to the individuals falling under the CBAs.  There was, however, no mapping provided as to the applicability of a specific SPD *and* the relevant CBA to a class member.  Only the two named Plaintiffs had specific SPDs and a specific CBA listed. Perhaps the parties did not provide this information because they believed it irrelevant.  Perhaps the parties did not provide the information because class adjudication would have been impossible due to the potentially numerous combinations of SPDs with CBAs. Nevertheless, the information was not provided, and the Court will not map the relevant documents (SPDs in conjunction with CBAs) for several thousand class members.

### d.  Conclusion

In sum, all of the SPDs in this sixth group contain termination provisions, which indicates that lifetime benefits were not promised.  And the language stating that insurance "will be" a certain amount or "will be" reduced a certain amount simply refers to the amount of insurance and not the duration of the insurance.  There is no clear and express language promising lifetime benefits. Finally, to the extent that several of the SPDs reference CBAs, there is no evidence in the record that any CBA or language in a CBA, has any relevance to Plaintiffs' contractual vesting claims under the SPDs. Thus, Defendants are entitled to summary judgment with regard to the class members identified in Exhibits A-90 through A-113 who base their contractual vesting claim on SPDs 50 through 73.[59] Conversely, the Court denies Plaintiffs' motion for summary judgment because Plaintiffs do not establish that the language in these SPDs provide for vested benefits.

### 3.  The Seventh Group of SPDs (74 through 96)

This group of twenty-three SPDs contains only medical SPDs. Class members identified in Exhibits A-114 through A-136 retired while these SPDs were in effect.[60] The language in this seventh group of SPDs is substantially similar in that the majority of the SPDs include one or more termination provisions stating that insurance under the Group Policy will cease, end, or terminate when the Group Policy terminates. The majority of these SPDs also provide that

---

[59] Defendants state that with regard to SPD 62, all six class members asserting that this SPD provides vested benefits already had summary judgment entered against them.  In addition, Defendants contend that one of the class members relying on SPD 63 already had summary judgment entered against her and thus cannot bring a claim.  Again, it was error for this Court to grant summary judgment in full as to a class member who bases his claim for vested benefits on multiple SPDs. Thus, these particular class members would still have a claim for benefits on these SPDs.  That claim, however, is now extinguished if it is based on one of the above SPDs. To the extent that these class members rely upon other SPDs that have not been presented to the Court, their claim would remain.

[60] There appear to be approximately 1,049 class members relying on SPDs 74 through 96.

benefits "will be continued" or state that individuals "will be insured" after retirement.  Finally, each of these SPDs contains a ROR provision referencing business necessity or financial hardship.[61]

Plaintiffs again assert that the "will be" language is indicative of lifetime benefits. Plaintiffs also contend that the termination provisions do not allow termination of the plan but only allow termination of the policy. Finally, Plaintiffs contend that Defendants did not meet the requirement of the ROR clause stating that the plan could be amended or terminated for reasons of business necessity or financial hardship. The Court will address each contention.

### a.  *"Will be" language*

Plaintiffs contend that the language stating that benefits "will continue," are "continued," or "will be continued" is indicative of vested benefits.  As noted above in Section II(D)(1)(b), the Tenth Circuit rejected this argument noting that this language does not expressly provide unalterable benefits until death. Thus, Plaintiffs' argument with regard to this language fails.

### b.  *Termination provisions*

The majority of these SPDs also contain termination provisions that insurance ends or terminates when the group policy or plan ceases.  Plaintiffs argue that this provision only allows termination of the policy rather than the plan. Again, as noted above in Section II(D)(2)(b), the Tenth Circuit rejected Plaintiffs' position and found that these provisions allowed termination of the plan when Plaintiffs fail to identify any distinctions between the plan and the policy. Accordingly, the termination provisions in these SPDs make clear that Defendants could terminate the plan and benefits were not promised for life.

---

[61] Most of the ROR clauses at issue in this group also reference a CBA. This issue will be discussed below in Section II(D)(3)(c)(2).

### c.   ROR clauses

Defendants assert that these SPDs are all similar due to the ROR clause stating that "the Company reserves the right to amend, discontinue or terminate the Plan for reasons of business necessity or financial hardship."   The Court notes, however, that Defendants do not accurately quote the ROR provision in the majority of these SPDs.   Only two of the twenty-three SPDs contain the clause as stated above.[62] The other twenty-one SPDs have a ROR provision stating that "[t]he Company expects to continue the Plan for the foreseeable future. However, the company reserves the right to amend, discontinue or terminate the Plan, *subject to the requirements of any applicable collective bargaining agreements*, for reasons of business necessity or financial hardship."[63] The Court will first address the ROR provision that only references business necessity or financial hardship. Next, the Court will address the ROR provision that also references a CBA.

### 1.   ROR clause referencing business necessity

Plaintiffs assert, as they previously did before this Court and the Tenth Circuit, that the ROR clause stating that the company has the right to amend or terminate the plan for reasons of business necessity or financial hardship requires Defendants to demonstrate that the company was in bankruptcy or other severe financial position before terminating the plan. Plaintiffs also contend that Defendants make no showing that these conditions were satisfied. The Tenth Circuit rejected this argument and found that "[t]he ROR clauses at issue here are cabined only by the condition that the change in coverage be based on a business decision."[64]   Finding that the

---

[62] SPDs 74, 76, Doc. 490-2, pp. 49, 51.

[63] SPDs 75, 77-96, Doc. 490-2, p. 50 and pp. 52-75 (emphasis added).

[64] *Fulghum II*, 2015 WL 1905798 at *8.

evidence demonstrated that Defendants had a business justification for amending the plans, the Tenth Circuit determined that the SPDs' allowance for amendment of the plans for reasons of business necessity or financial hardship was appropriate. Thus, the Tenth Circuit concluded that summary judgment was appropriate on the SPDs containing these ROR clauses related to business necessity.[65]

With regard to the two SPDs in this group containing this ROR provision, the ROR clause does not limit Defendants' right to amend the plans for financial hardship. Defendants do not have to demonstrate financial calamity. Instead, the ROR provision only speaks of business necessity. As the Tenth Circuit noted, this type of ROR clause is extremely broad. The record here demonstrates that Defendants' decision to reduce retiree medical benefits was to avoid providing duplicate benefits that retirees could obtain through Medicare. Defendants estimated that this decision to eliminate medical benefits (and life insurance benefits) would result in annual cash savings of $21.4 million. Defendants have thus provided a business justification for the amendment of the plans. Thus, Plaintiffs' contention that Defendants do not provide a business justification for terminating the plans fails. Accordingly, the language in these two SPDs do not contractually provide for lifetime benefits.

### 2. ROR clause referencing business necessity or financial hardship and CBA

Twenty-one SPDs in this group have a ROR provision stating that "the company reserves the right to amend, discontinue or terminate the Plan, subject to the requirements of any

---

[65] With regard to this round of summary judgment motions, Plaintiffs also attempt to rely upon Treasury Regulation § 1.401-1(b)(2) for support that Defendants could not terminate the plans. Plaintiffs also apparently made this argument in their appeal to the Tenth Circuit with regard to this Court's previous order. Plaintiffs, however, did not previously make that argument to this Court. Thus, the Tenth Circuit stated that it was "not preserved for appellate review." *Id.* at *7. The Tenth Circuit, however, went on to state that "even if the issue had been preserved," Plaintiffs' reliance on the treasury regulation was "misplaced" and did not help their argument. *Id.* Therefore, the Court will not address Plaintiffs' argument here.

applicable collective bargaining agreements, for reasons of business necessity or financial hardship."[66] The Court never previously considered this ROR provision. Thus, Defendants' assertion that this Court's prior ruling on ROR provisions with business necessity language governs these SPDs is incorrect.[67]

Nevertheless, Plaintiffs do not explain nor set forth any evidence as to how this ROR clause impacts these SPDs or if it demonstrates a question of fact as to whether Defendants promised lifetime medical benefits. Plaintiffs' discussion of these ROR clauses is generally limited to the argument that Defendants must demonstrate business necessity to terminate benefits.[68] As explained in detail above, Plaintiffs' argument that the ROR clause limits Defendants' right to amend the plans based on financial hardship fails. With regard to the ROR clauses referencing CBAs, Plaintiffs again fail to direct the Court to any specific CBA relating to these particular SPDs. In addition, Plaintiffs do not provide any evidence to the Court that terminating the benefits under these particular SPDs violated any specific CBA.[69] Thus,

---

[66] *See, e.g.*, SPDs 75, 77-96. The Court notes that several of these SPDs also state that the plan "is maintained pursuant to CBAs." As discussed above, Plaintiffs do not identify any specific, relevant CBA (or language in a particular CBA) that is related to any of these SPDs. Accordingly, the Court will not consider language in CBAs isolated from these particular SPDs.

[67] This type of provision was not considered by the Tenth Circuit on appeal either.

[68] *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, Doc. 497, p. 41 (stating that "SPDs 74-89, 91-92, and 96-103 do include a reservation clause but it expressly limits the power to amend or terminate to 'cases of business necessity or financial hardship.' Defendants' benefit reductions were not authorized under the terms of these SPDs and ROR clauses. The record shows that Defendants made no attempt, and could not demonstrate satisfaction of the limiting conditions.").

Plaintiffs only briefly note that these ROR provisions reference CBAs in a later discussion. *See* Doc. 497, p. 43. Plaintiffs, however, address this provision in a totality of two paragraphs. *See* Doc. 497, p. 43 and Doc. 514, p. 14. The Court notes that Plaintiffs do not even point out to the Court all of the relevant SPDs that contain ROR clauses referencing CBAs.

[69] As noted above in Section II(D)(1), one of the SPDs in Group 5 has an ROR clause stating that "[t]he Company expects to continue the Plan for the foreseeable future. However, the Company reserves the right to amend, discontinue or terminate the Plan and/or Plan benefits, *subject to the requirements of any applicable collective bargaining agreement*." SPD 35, Doc. 490-2, p. 5 (emphasis added). This ROR provision is slightly different from the ones above because it does not contain business necessity or financial hardship language. It does,

Plaintiffs fail to demonstrate that a requirement in any CBA prohibited Defendants' ability to amend or discontinue the plan.  Plaintiffs fail to demonstrate in any way that these SPDs promised lifetime benefits.

### d.  Conclusion

In sum, with regard to this seventh group of SPDs, there is no language clearly and expressly providing for lifetime benefits. Thus, Defendants are entitled to summary judgment with regard to the class members identified in A-114 through A-136 who base their contractual vesting claim on SPDs 74 through 96.[70] Conversely, the Court denies Plaintiffs' motion for summary judgment because Plaintiffs do not establish that the language in these SPDs provide vested benefits.

### 4.  The Eighth Group of SPDs (97 through 103)

This group of seven SPDs contains only life insurance SPDs. Class members identified in Exhibits A-137 through A-143 retired while these SPDs were in effect.[71] This eighth group contains similar language because each SPD contains a ROR provision stating that "the Company reserves the right to amend, discontinue or terminate the Plan for reasons of business necessity or financial hardship."  Each SPD also contains a termination provision stating that

---

however, include a statement that the reservation of rights is subject to the requirements of "any collective bargaining agreement." *Id.* The Court's reasoning above as to Plaintiffs' failure to direct the Court to any relevant CBA to a particular SPD is also applicable to SPD 35.  In fact, Plaintiffs did not even point out to the Court that SPD 35's ROR provision referenced a CBA. Accordingly, there is no evidence before this Court that termination of the benefits described in SPD 35 violated any applicable CBA that purportedly promised lifetime benefits.

[70] Defendants state that all eighty-four class member who rely upon SPD 77 and all thirty-three class members who rely upon SPD 84 already had summary judgment entered against them on the claim for contractually vested benefits. As noted above, the Tenth Circuit found that it was error for this Court to grant summary judgment in full as to a class member who bases his claim for vested benefits on multiple SPDs. Thus, these particular class members would still have a claim for benefits on SPDs 77 and 84.  A claim for benefits on these SPDs, however, is now extinguished.  To the extent that these class members rely upon other SPDs that have not been presented to the Court, their claim would remain.

[71] There appear to be approximately 296 class members relying on SPDs 97 through 103.

-24-

"coverage ends when . . . the group policy ceases."  Six of the seven SPDs state that life insurance benefits "will be reduced by 50%," and one SPD states that "benefits will be continued but reduced by 50%."

### a.  *"Will be" language*

The language that Plaintiffs argue is lifetime language is the language stating that a retiree's life insurance will be reduced by fifty percent. And for the reasons stated above in Section II(D)(1)(b), the Court rejects this argument. This language is simply discussing the amount of the benefits, not the duration of those benefits.  It in no way clearly and expressly promises lifetime benefits.

### b.  *ROR provision referencing business necessity*

For the reasons stated above in Section II(D)(3)(c)(1), Plaintiffs' assertion that the ROR clause requires a showing of financial hardship fails. The ROR provision only speaks of business necessity, and there is evidence in the record establishing a business justification. Thus, Plaintiffs' argument that Defendants fail to provide a legitimate justification for terminating benefits fails.

### c.  *Termination provisions*

Furthermore, each SPD in this group also contains a termination provision stating that coverage ends when the group policy terminates.  For the reasons stated above in Section II(D)(2)(b), these termination provisions provide an additional reason that these SPDs do not clearly and expressly state that Plaintiffs are entitled to lifetime benefits.[72] Plaintiffs simply do

---

[72] Although all of the SPDs in this group also state that they are maintained pursuant to a CBA, as discussed above, Plaintiffs fail to direct the Court to any specific, relevant CBA (or language in a particular CBA) that is related to any of these SPDs.  Accordingly, the Court will not consider language in CBAs isolated from these particular SPDs.

not direct the Court to language in any of these SPDs that provides for lifetime life insurance benefits.

### d.  Conclusion

Reading these SPDs as a whole, they do not state in clear and express language that Plaintiffs are entitled to lifetime, unalterable benefits.  Thus, Defendants are entitled to summary judgment with regard to the class members identified in Exhibits A-137 through A-143 who base their contractual vesting claim on SPDs 97 through 103.[73]  Conversely, the Court denies Plaintiffs' motion for summary judgment because Plaintiffs do not establish that the language in these SPDs provide for vested benefits.

### 5.  Summary

In sum, the Court finds that none of the seventy-one SPDs contains language indicative of lifetime medical or life insurance benefits.  The class members that rely upon these seventy-one SPDs for their claim of vested benefits no longer have a contractual vesting claim on these documents. The Court therefore grants Defendants' Motion for Summary Judgment (Doc. 488). Conversely, the Court denies Plaintiffs' Motion for Summary Judgment (Doc. 502).

---

[73] With regard to SPD 101, Defendants state that thirty-two class members identified in Exhibits A-137 through A-143 already had summary judgment entered against them on their claim for such benefits and thus cannot bring a claim on this SPD.  As noted above, the Tenth Circuit found that it was error for this Court to grant summary judgment in full as to a class member who bases his claim for vested benefits on multiple SPDs. Thus, these particular class members would still have a claim for benefits on SPD 101.  A claim for vested benefits on this particular SPD, however, is now extinguished.  To the extent that these particular class members rely upon other SPDs that have not been presented to the Court, their claim would remain.

III.   **Defendants' Motion for Summary Judgment on Contractual Vesting Claims of Plaintiffs Clark and Britt and Plaintiffs' Cross Motion for Summary Judgment on Contractual Vesting Claims of Plaintiffs Clark and Nelson (Docs. 495, 505)**

A. **Plaintiff Britt**

1. *Facts and Procedural History*

Named Plaintiff James Britt retired from Carolina Telephone and Telegraph Company ("CT&T") in approximately June 1985. Britt contends that his life insurance benefits vested under the terms of SPD 7 and that his medical benefits vested under the terms of SPD 10. When Britt retired in 1985, CT&T and the Communications Workers of America ("CWA") were parties to a CBA effective November 30, 1984, through November 29, 1987 ("CBA 5"). Britt died on February 18, 2013, and Ms. Nelson, the administrator of his estate, was substituted for him as a plaintiff.

Defendants previously sought summary judgment on Britt's contractual vesting claim.  In this Court's February 14, 2013, Order, the Court determined that SPD 7 (life insurance SPD) and SPD 10 (medical benefits SPD) did not give rise to lifetime benefits.[74]  In this order, however, the Court noted that the parties had stated that CBA 5 was relevant to Britt's claim.[75]  The parties did not specifically address how the CBA, in conjunction with the two SPDs, related to Britt's claim for vested benefits.  Plaintiffs, however, directed the Court to some language indicating that this particular CBA may not have expired.  Thus, the Court found that because Defendants did not address whether the CBA remained in effect, Defendants could not demonstrate the

---

[74] *Fulghum I*, 938 F. Supp. 2d at 1113-17.

[75] The parties did not identify any other individual covered by this CBA. The Court, thus, was under the impression that CBA 5, in connection with SPDs 7 and 10, was only applicable to named Plaintiff Britt.

absence of a genuine issue of material fact. Accordingly, the Court did not grant summary judgment in Defendants' favor with regard to Britt's contractual vesting claims.

On appeal to the Tenth Circuit, the circuit found that SPDs 7 and 10 did not clearly or expressly provide for lifetime benefits.[76] And, as discussed above, the Tenth Circuit noted that it agreed with Defendants' assertion that Plaintiffs had waived a claim for vested benefits under CBAs.  In this same footnote, the circuit stated that although the issue was not before the court, "it [was] accordingly unclear why the district court refused to grant summary judgment in favor of Defendants on the claims raised by named plaintiff Britt."[77]  The Tenth Circuit's decision guides this Court's analysis.

### 2. Analysis

Defendants again seek summary judgment on Britt's contractual vesting claim. Defendants first argue that Plaintiff Britt waived any claim that CBA 5 created vested benefits. In addition, Defendants contend that even if Plaintiff did not waive a CBA-based contractual vesting claim, CBA 5 does not contain any language creating vested benefits. Plaintiffs assert that there is no waiver of CBA-based claims for vested benefits. Plaintiffs also state that the language in SPDs 7 and 10 and CBA 5 provide for vested medical and life insurance benefits.

Due to the circuit's note that Plaintiffs waived any CBA-vesting claims and its statement regarding Plaintiff Britt's claim, Plaintiff Britt cannot rely upon a CBA in isolation to establish contractually vested benefits. The SPDs (7, 10) at issue with regard to named Plaintiff Britt do

---

[76] *Fulghum II*, 2015 WL 1905798 at **5-8.

[77] *Id*. at *10, n.15.

not contain language specifically addressing or referring to a CBA.[78] Thus, the SPDs do not contemplate consideration of any language contained in CBAs. Plaintiff Britt's claim for vested benefits, therefore, can only be premised on SPDs 7 and 10. Because these SPDs have already been found to not contain lifetime benefit language, Plaintiff Britt's contractual vesting claim fails. Accordingly, the Court grants Defendants' Motion for Summary Judgment (Doc. 495) with regard to Plaintiff Britt and denies Plaintiffs' Motion for Summary Judgment (Doc. 505) with regard to named Plaintiff Britt.

### B. Plaintiff Clark

#### 1. Facts and Procedural History

Named Plaintiff Donald Clark retired from CT&T in approximately August 1976. Clark contends that his medical benefits vested under the terms of SPD 16 and his life insurance benefits vested under SPD 51 [previously SPD 17]. SPD 16 provides that "[i]nsurance coverage for you and your dependents can be continued after retirement."[79]  SPD 51 provides that "[r]egular life insurance, but not Accidental Death and Dismemberment, is continued for employees after retirement."[80] It also provides that "[o]n the fifth anniversary of retirement, the amount of the insurance is reduced by fifty percent (50%) and remains at that figure for lifetime."[81]  Both SPD 16 and 51 contain the following provisions:

---

[78] Unlike named Plaintiff Britt, named Plaintiff Clark's SPDs have specific language addressing a CBA and that benefits under the plan will depend upon the terms of the CBA.

[79] *Fulghum I*, 938 F. Supp. 2d at 1119.

[80] *Id*.

[81] *Id.*

<u>Termination of Benefits</u>

Insurance coverage will automatically terminate if your active full time employment in the classes eligible for insurance terminates, or if the provisions of the group policy under which you are covered terminate.

<u>Collective Bargaining Agreement</u>

This plan, as applicable to union represented employees, is maintained pursuant to a collective bargaining agreement. Benefits under the plan for employees covered under the bargaining agreement will depend on the terms of the agreement.[82]

When Clark retired in 1976, CT&T and the CWA were parties to a CBA effective June 29, 1974

through June 29, 1977 ("CBA 1").  CBA 1 was in effect when Clark retired. CBA 1 states:

The insurance programs of the Company, including group life insurance, dependent life insurance, basic hospitalization insurance and extraordinary medical expense plan, shall remain in force during the term of the Agreement. . . . The Company reserves the right to charge individual employees with any increases in premium cost beyond those in effect for all insurance programs on the date of this Agreement.[83]

Article 36, Section 1 of CBA 1, "Duration of Agreement," provides that "[t]his agreement

becomes effective at 12:00 noon on June 29, 1974 and shall remain in full force and effect until

12:00 noon on June 29, 1977 . . . ."[84] Section 3 provides:

This Agreement shall continue in full force and effect after June 29, 1977 unless either party gives the other party sixty (60) days written notice to cancel, revise or modify part of the Agreement. In the event agreement is not reached within sixty (60) days after such notice of cancellation, the Agreement shall in all respects be voided and terminated. Extensions may be agreed to by written agreement between the parties.[85]

---

[82] *Id.*

[83] CBA 1, Doc. 492-65, p. 5.

[84] *Id.* at p. 6.

[85] *Id.* at pp. 7-8.

Defendants previously sought summary judgment on Clark's contractual vesting claim. In this Court's February 14, 2013, Order, the Court did not make a determination as to whether the language in SPDs 16 or 51 provided lifetime benefits. Instead, the Court noted that the SPDs referred to a CBA, the parties had stated that CBA 1 was relevant to Clark's claim, and some language in CBA 1 made it appear that it had not expired. Finding that Defendants had not demonstrated the absence of a genuine issue of material fact, the Court did not grant summary judgment in Defendants' favor with regard to Clark's contractual vesting claims. The parties did not appeal this ruling.  Thus, the Tenth Circuit did not consider the specific language or issues with regard to these two SPDs (16 and 51) and CBA (1).

Defendants provide the following additional uncontroverted facts with regard to their current Motion for Summary Judgment on named Plaintiff Clark.  CT&T and the CWA amended CBA 1 to extend its expiration date by three months to September 29, 1977.  On July 25, 1977, the CWA sent CT&T a letter stating that it "does not desire that [CBA 1] covering wages, hours, pensions and other conditions of employment be automatically renewed in accordance with its provisions and, therefore, terminates such agreement effective September 29, 1977, as provided therein."[86] CT&T and the CWA entered into CBA 2, effective October 1, 1977, which terms superseded the terms of CBA 1.

### 2. Analysis

Defendants again seek summary judgment on Clark's contractual vesting claims. Defendants argue that language in SPDs 16 and 51 is similar to language in other SPDs that the Court previously determined is not indicative of vested lifetime benefits.  Defendants also assert

---

[86] Letter to CT&T, Doc. 494-51, p. 1.

that Plaintiff Clark has waived any claim that CBA 1 creates vested benefits. In addition, Defendants contend that even if Plaintiffs did not waive a CBA-based contractual vesting claim, CBA 1 does not contain any language creating vested benefits. Plaintiffs state that the language in SPDs 16 and 51 and CBA 1 provide for vested medical and life insurance benefits. Plaintiffs also assert that there was no waiver of CBA-based claims for vested benefits.

   a.   *"Can be continued" and "is continued" language*

   Plaintiffs contend that language in these two SPDs is indicative of contractual benefits for life.  The medical SPD (16) states that insurance coverage "can be continued after retirement." The language that Plaintiffs rely upon in SPD 51 states that "life insurance . . . is continued for employees after retirement" and "on the fifth anniversary of retirement, the amount of the insurance is reduced by fifty percent (50%) and remains at that figure for lifetime." With regard to this language, it in no way promises lifetime medical benefits. As explained above in Section II(D)(1)(b), the Tenth Circuit found that this type of language does not clearly or expressly provide that benefits will continue, unaltered, until death as required to demonstrate contractual vesting. Instead, it simply states the unremarkable proposition that coverage may continue after retirement. To the extent that it references a reduction by fifty percent, this language relates to the amount of insurance and not the duration of the insurance.

   b.   *Termination language*

   Both of these SPDs also contain termination language stating that insurance coverage will terminate "if the provisions of the group policy under which you are covered terminate." As noted above in Section II(D)(2)(b), these termination provisions demonstrate that Defendants had the power to terminate the life insurance benefits. To the extent that Plaintiffs argue that the "policy" is different than the "plan," Plaintiffs fail to direct the Court to any evidence

demonstrating a distinction. Due to the termination provisions expressly allowing for termination of medical and life insurance benefits, and the omission of clear and express language stating that benefits will be provided for life, the Court finds that these SPDs, on their own, do not establish lifetime benefits.

### c.  CBA language in the SPDs

Both of these SPDs reference a CBA.  Specifically, they state that the plans are "maintained pursuant to a collective bargaining agreement. Benefits under the plan for employees covered under the bargaining agreement *will depend on the terms of the agreement*."[87] Thus, the Court must look at the CBA because the SPD expressly provides that the CBA is relevant to determining plan benefits, and Plaintiffs specifically reference CBA 1, with respect to these two SPDs.[88]

CBAs, including those that establish ERISA plans, must be interpreted "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy."[89]  "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent."[90] Even if the words of a contract are ambiguous, "courts should not construe ambiguous writings to create lifetime promises."[91]

---

[87] *Fulghum I*, 938 F. Supp. 2d at 1119 (emphasis added).

[88] The Court is mindful that the Tenth Circuit stated that Plaintiffs waived claims for contractual vesting based on CBAs.  As noted above, however, these particular SPDs state that benefits depend upon the terms of the CBA. The Court only considers the CBA because the SPDs specifically reference these documents, and the parties directed the Court to the relevant CBA related to these SPDs.

[89] *Tackett*, 135 S. Ct. at 933 (citation omitted).

[90] *Id.* (citing 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012)).

[91] *Id.* at 936 (citation omitted).

In Clark's CBA, it states that "[t]he insurance programs of the Company, including group life insurance, dependent life insurance, basic hospitalization insurance and extraordinary medical expense plan, shall remain in force during the term of the Agreement."  The CBA also states that the duration of the Agreement is June 29, 1974 through June 29, 1977. Therefore, Defendants argue that even if the Court considers CBA 1, it only provides that the medical and life insurance benefits remain in effect during the term of the agreement.

The Tenth Circuit has not addressed the effect of CBA language specifying the duration of medical or life insurance benefits. Several other circuits, however, have addressed the issue and have concluded that CBA language providing durational limits is not indicative of lifetime benefits.  Specifically, in *Coffin v. Bowater, Inc.*,[92] the First Circuit found that language in a CBA stating that health and welfare benefits "will be provided during the term of this labor agreement" was unambiguous, and this clear durational language indicated that benefits would only be provided during the term of the agreement.[93] Thus, the First Circuit concluded that the district court did not err in granting summary judgment in favor of Defendant because there was no question of material fact as to whether the CBA contemplated providing lifetime benefits.[94]

The Seventh Circuit has also addressed the issue in several cases. The Seventh Circuit has found that when a CBA explicitly states that benefits will be continued during the term of the CBA, the language means exactly what it states—benefits will only be continued during the

---

[92] 501 F.3d 80 (1st Cir. 2007).

[93] *Id*. at 97-99.

[94] *Id*. at 99.

duration of the agreement and there is no promise of lifetime welfare benefits.[95]  Similarly, the Second Circuit determined that a CBA's statement that medical benefits could not be reduced "during the term of this Agreement" meant that those benefits were only valid during the agreement.[96] "Promising to provide benefits for a certain period of time necessarily establishes that once that time period expires, the promise does as well."[97] Furthermore, the Second Circuit found that because the terms of the CBA unambiguously established that there was no obligation to provide medical benefits to retirees after the CBA expired, the plaintiffs' extrinsic evidence that the defendant had continued to provide medical benefits after the expiration of the CBA could not change the result.[98] Thus, the Second Circuit concluded that "the CBAs unambiguously indicate that retiree medical benefits were not vested" and affirmed dismissal of the plaintiffs' contractual vesting claims.[99] The Fourth and Ninth Circuits have also concluded

---

[95] *See Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 483-84 (7th Cir. 2006) (finding that a CBA's language stating that benefits were provided during the "period of this agreement" was similar to a reservation of rights clause indicating that the benefits would be valid only when the CBA was in effect and not indicative of lifetime benefits); *Rosetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 547 (7th Cir. 2000) (noting the Seventh Circuit's principle that "[i]f the agreement makes clear that the entitlement expires with the agreement, as by including such a phrase as 'during the term of this agreement,' then, once again, the plaintiff loses as a matter of law unless he can show a latent ambiguity by means of objective evidence"); *Pabst Brewing Co., Inc. v. Corrao*, 161 F.3d 434, 441 (7th Cir. 1998) (finding that the phrase "for the term of this Agreement" meant that welfare benefits were provided during the agreement's term and did not extend past the agreement's term to become lifetime benefits).

[96] *Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 981 (2d Cir. 1997).

[97] *Id.*

[98] *Id.  See also Coffin*, 501 F.3d at 98-99 (finding that the clear durational language of "during the term of this labor agreement" did not indicate a latent ambiguity and the plaintiffs' extrinsic evidence was an attempt to "argue that the language does not mean what it says"); *Corrao*, 161 F.3d at 441-42 (finding it unnecessary to consider extrinsic evidence to determine what the phrase "for the term of this Agreement" meant).

[99] *American Fed'n of Grain Millers*, 116 F.3d at 982.

that clear and express durational language in a CBA indicates that benefits shall remain in effect during the term of the agreement and not indefinitely for life.[100]

Furthermore, the United States Supreme Court recently stated that "[b]ecause vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest must be found in the plan documents and must be stated in clear and express language."[101] "[W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life."[102]  In this case, the Agreement is not silent. Indeed, CBA 1 states that the insurance programs, including medical and life insurance, "shall remain in force during the term of the Agreement." This clear and express language indicates that these insurance benefits were only promised during the term of the Agreement.

The question then becomes when did the Agreement end? As noted above, the CBA provides that the Agreement shall remain in effect until June 29, 1977.  There is, however, another provision in the Agreement stating that unless either party gives written notice that it seeks to cancel, revise or modify part of the CBA, the Agreement shall continue after June 29, 1977.[103] There is evidence that CBA 1's expiration date was extended by three months to

---

[100] *See Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292 (4th Cir. 2011) (stating that the "direct and plain" language " 'that such benefits shall remain in effect for the term of this . . . Agreement' " was a contractual duration on the length of retirees' health benefits and did not establish benefits past the agreement's termination); *Turner v. Local Union No. 302, Int'l Brotherhood of Teamsters*, 604 F.2d 1219, 1225 (9th Cir. 1979) (noting that CBAs stating that retiree benefits would continue "throughout the term of this agreement" were "subject to termination at the end of any of the [CBAs].").

[101] *Tackett*, 135 S. Ct. at 937 (citation omitted).

[102] *Id.*

[103] When Defendants previously sought summary judgment on named Plaintiff Clark's claim, the evidence was unclear as to whether the CBA had expired.

September 29, 1977.  Defendants also provide evidence that the CBA terminated on that date, and CT&T and CWA entered into a new CBA (CBA 2) on October 1, 1977.  Those terms superseded the terms of CBA 1.

Despite this evidence, Plaintiffs continue to argue that Defendants contractually agreed to provide lifetime benefits to Plaintiff Clark. Plaintiffs' argument is difficult to discern.  Plaintiffs argue that the letter from the CWA President shows that the union did not desire to terminate the agreement but instead sought improvement in benefits. They cite to the following language: "The Union desires to enter into a new agreement effective on the date aforesaid containing improvements in wages, hours, pensions and other conditions of employment . . ."[104] Thus, Plaintiffs argue that there was no termination of the CBA but that there was only amendment and improvement of the CBA in successor CBAs.  Yet, the letter explicitly states that "[n]otice is hereby given . . . [that the union]  does not desire that [CBA 1] covering wages, hours, pensions and other conditions of employment be automatically renewed in accordance with its provisions and, therefore, *terminates such agreement* effective September 29, 1977."[105] Plaintiffs' interpretation that the agreement did not terminate is contrary to the evidence and the specific terms of the letter. Thus, the Agreement terminated on September 29, 1977, and there was no promise in the Agreement to provide benefits past its expiration.

To the extent that Plaintiffs argue that the CBA only preserved a limited right to change contributions and did not retain the right to reduce or terminate benefits, the Court rejects this argument. The Court sets forth the entire section addressing benefits so as to view it in the appropriate context.  Article 22 provides:

---

[104] Letter to CT&T, Doc. 494-51, p. 1.

[105] *Id.* (emphasis added).

Section 1.

    A.  The insurance programs of the Company, including group life insurance, dependent life insurance, basic hospitalization insurance and extraordinary medical expense plan, shall remain in force during the term of the Agreement. The contributions made by the Company for individual employees toward the cost of such insurance shall remain in the same amount as in effect on the date of this Agreement, except that beginning with the date of this Agreement the Company will pay, for employees who have basic hospitalization insurance, the full amount of the single coverage premium.

    B.  The Company reserves the right to charge individual employees with any increases in premium costs beyond those in effect for all insurance programs on the date of this Agreement.

Section 2. The Plan for Employees' Pensions, Disability Benefits and Death Benefits as amended July 1, 1971, shall continue unless amended by the Company after notice to the Union.[106]

Plaintiffs rely on Section 1.B for the proposition that Defendants could only change premiums and not the benefits itself. They fail, however, to note that the Section 1.A, directly above, specifically states that the insurance programs shall remain in place during the Agreement.  Thus, it appears that the limited right to change premiums only relates to the three-year term of the agreement. In short, it appears that this Agreement provides that Defendants agreed to provide insurance benefits during the term of the Agreement (because the Agreement states that the insurance programs shall remain in force during the Agreement) but that Defendants could charge individuals with premium increases during the term of the Agreement (because they reserved that right). Furthermore, Section 2, relating to pensions, bolsters the conclusion that welfare benefits were only provided during the time of the Agreement.  Section 2 provides that pensions "shall continue unless amended."  There is no durational limit in this section.  Thus,

---

[106] CBA 1, Doc. 492-65, p. 5.

Plaintiffs' argument that Defendants did not retain the right to reduce or eliminate insurance after the term of the agreement fails.

Plaintiffs do not identify any clear or express language promising lifetime insurance benefits. As noted by the United States Supreme Court, the traditional principle of contract law is that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement."[107] Although a CBA can provide vested lifetime benefits that would continue after the CBA's expiration, a court may not infer vesting if the CBA is silent. Again, this CBA is not silent and specifically states that insurance benefits will be provided during the term of the agreement. Thus, Plaintiffs' argument that Defendants did not retain the right to reduce or eliminate insurance after the term of the agreement fails.

Finally, Plaintiffs also argue that even if the CBA did terminate, there is evidence that lifetime benefits continued beyond the stated term of the CBA. Plaintiffs, however, attempt to rely upon extrinsic evidence to prove this point. As noted above, the phrase that insurance benefits "shall remain in force during the term of the Agreement" is clear and unambiguous, and Plaintiffs cannot resort to extrinsic evidence in an attempt to demonstrate a latent ambiguity or change the meaning of the words in the CBA. There are no provisions promising lifetime welfare benefits in this CBA.

In conclusion, contractual vesting is not to be inferred lightly. SPDs 16 and 51 do not include clear and express language promising lifetime medical and life insurance benefits. To the contrary, both SPDs contain termination provisions. Furthermore, although these SPDs direct the Court to consider the terms of CBA 1, there is no language in CBA 1 promising lifetime

---

[107] *Tackett*, 135 S. Ct. at 937 (citing *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 207 (1991)).

medical and life insurance benefits. Instead, the CBA states that insurance benefits are to be provided during the term of the agreement, which expired in 1977. Plaintiffs' interpretation of the plain language in both the SPDs and the CBA would override explicit terms establishing that the benefits were durational and could be terminated. Accordingly, the Court finds that there is no genuine issue of material fact as to named Plaintiff Clark's claim for contractually vested benefits.[108] Thus, the Court grants Defendants' Motion for Summary Judgment (Doc. 495) with regard to named Plaintiff Clark. In addition, the Court denies Plaintiffs' Motion for Summary Judgment (Doc. 505) with regard to named Plaintiff Clark.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment on the Unadjudicated Contractual Vesting Claims of Additional Unionized Members (Doc. 488) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Contractual Vesting Claims of Plaintiffs Clark and Nelson (Doc. 495) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Cross-Motion for Summary Judgment on Liability on Contractual Vesting Claims of Unionized Class Members (Doc. 502) is **DENIED**.

---

[108] Even if named Plaintiff Britt's claim would have been allowed to continue based on CBA language, his CBA (CBA 5) also contains a durational clause indicating that benefits would be provided during the term of the Agreement. Evidence indicates that this CBA expired on November 29, 1987. Thus, Plaintiff Britt's claim based on language in CBA 5 would also fail.

**IT IS FURTHER ORDERED** that Plaintiffs' Cross Motion for Summary Judgment on Contractual Vesting claims of Plaintiffs Clark and Nelson (Doc. 505) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 10th day of June, 2015.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE