# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM DOUGLAS FULGHUM, et al.,
individually and on behalf of all others
similarly situated,

        *Plaintiffs,*

vs.                                                   Case No. 07-2602-EFM

EMBARQ CORPORATION, et al.,

        *Defendants.*

## MEMORANDUM AND ORDER

Plaintiffs, on behalf of themselves and a certified class, filed this action alleging that Defendants' elimination of retirees' medical and life insurance benefits violated the Employee Retirement Income Security Act of 1974 ("ERISA"). The only claim remaining in the case is the seventeen named Plaintiffs' breach of fiduciary duty claim. Currently before the Court is Defendants' Motion for Summary Judgment related to two of the seventeen Plaintiffs' breach of fiduciary duty claim. Because the Court finds that genuine issues of material fact exist, the Court denies Defendants' Motion for Summary Judgment (Doc. 553).

## I.      Procedural Background

The Court will only set forth a brief procedural background.[1]  Seventeen named Plaintiffs brought this lawsuit, on behalf of themselves and a class of approximately 15,000 individuals. Plaintiffs asserted, in their first and third claims, that the summary plan descriptions ("SPDs") in effect when they retired gave them a contractual right to vested health and life insurance benefits, and Defendants' modification or elimination of their health care and life insurance benefits violated ERISA.

In Plaintiffs' second claim, pursuant to ERISA section 502(a)(3),[2] the seventeen named Plaintiffs alleged that Defendants breached their fiduciary duty by misrepresenting the terms of the plans by affirmatively telling Plaintiffs, through SPDs, written communications, and oral statements, that their medical and life insurance benefits were lifetime benefits.  Plaintiffs also alleged that Defendants failed to inform them that their benefits could change. The Court did not certify a class with respect to Plaintiffs' breach of fiduciary duty claim.   An additional, approximate 1,000 Plaintiffs filed a separate lawsuit, *Abbott v. Sprint Nextel Corp.*,[3] in which they assert a breach of fiduciary duty claim against Defendants.

Defendants previously sought summary judgment on Plaintiffs' claims.  On February 14, 2013, this Court issued an Order granting in part and denying in part Defendants' motion.[4] Relevant to this Order, the Court granted summary judgment to Defendants on Plaintiffs'

[1] This case has been on file since December 2007 and thus has a significant history.  This Court's opinion in *Fulghum v. Embarq Corp. (Fulghum I)*, 938 F. Supp. 2d 1090 (D. Kan. 2013) (affirmed in part and reversed in part by *Fulghum v. Embarq Corp. (Fulghum II)*, 785 F.3d 395 (10th Cir. 2015)) explains the history of the case in more detail.

[2] 29 U.S.C. § 1132(a)(3).

[3] Case No. 11-CV-2572.

[4] *Fulghum I*, 938 F. Supp. 2d 1090.

contractual vesting claims.  With regard to the breach of fiduciary duty claim, the Court granted summary judgment in favor of Defendants as to fifteen of the seventeen named Plaintiffs finding that their claims were barred by the six-year statute of repose contained in 29 U.S.C. § 1113. Two named Plaintiffs' (Timothy Dillon and Sue Barnes) claims remained.

Plaintiffs appealed this Court's decision to the Tenth Circuit, pursuant to Federal Rule of Civil Procedure 54(b).  On April 27, 2015, the Tenth Circuit issued its opinion on Plaintiffs' Rule 54(b) appeal.[5]  In this opinion, the circuit made several rulings. With regard to Plaintiffs' contractual vesting claims, the court ruled that the approximate thirty SPDs at issue did not contain clear and express language promising lifetime health or life insurance benefits, thus affirming this Court's summary judgment order summary judgment order on this claim.[6]  As to the breach of fiduciary duty claim, the circuit reversed this Court's finding that the statute of repose barred fifteen of the seventeen named Plaintiffs' claim.

Defendants now bring a Motion for Summary Judgment on named Plaintiff Timothy Dillon's and Sue Barnes' breach of fiduciary duty claim.  Although all seventeen named Plaintiffs' breach of fiduciary duty claims are active, the parties agreed during a status conference to proceed this way in light of the parties' Petitions for a Writ of Certiorari with the United States Supreme Court requesting review of the Tenth Circuit's decision.  On November 30, 2015, the United States Supreme Court denied the petitions for a writ of certiorari.  The

---

[5] *Fulghum II*, 785 F.3d 395.

[6] *Id.* at 404-09.  While the case was on appeal, this Court allowed briefing on several issues related to the contractual vesting claims still before the Court.  The Court ruled on these issues on June 10, 2015.  Doc. 533.  After the Court issued this Order, the parties entered into a stipulation and jointly requested an Order resolving all remaining and unadjudicated contractual vesting claims.  The Court entered this Order on July 27, 2015. Accordingly, the only remaining claim in this case is Plaintiffs' breach of fiduciary duty claim.

Court will address Defendants' motion and Dillon's and Barnes' breach of fiduciary duty claim below.

## II.    Factual Background[7]

*Timothy Dillon*

Dillon worked at Sprint North Supply (and other affiliated entities) ("SNS" or "Company") between May 5, 1969, and November 9, 2001. SNS later became a subsidiary of Defendant Embarq Corporation. During the last twenty-four years that Dillon worked for SNS, he was a manager.

Dillon asserts that he was told that both active employee and retiree medical and life insurance benefits became vested after five years of employment. In the 1980s and 1990s, Dillon held multiple conversations with his Human Resources Manager, John Blanchet, and with the Company President, Stan Fisher, on the topic of lifetime retiree benefits. During these discussions, Dillon states Blanchet and Fisher repeatedly told him that the Company's retiree medical and life insurance benefits were provided for the retiree's lifetime. In the Company's effort to recruit and retain employees, Dillon, sometimes along with Blanchet, would inform prospective and current employees that the Company provided lifetime pension, medical, and life insurance benefits to those employees who remained with the Company until they retired.

Dillon never checked any documents to see if they stated that employee medical and life insurance benefits were vested, and he never read any document stating that such benefits were vested. During Dillon's employment, he received and reviewed annual enrollment documents describing the medical plans offered for the coming year, which provided that "the [C]ompany

---

[7] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

reserve[d] the right to amend or terminate any of the plans at any time." Summary plan description ("SPD") 5 was applicable to Dillon. He understood that he needed to review SPD 5 to determine what his medical benefits would be in retirement. SPD 5 contains five reservation of rights provisions ("ROR") stating that the company has the right to amend or terminate the plan at any time. Dillon read parts of SPD 5, but he did not read any of the RORs. He states that even if had read the RORs, he would not have believed them to be applicable to him as a retiree, and the ROR provisions would only be applicable to active employees.

On or around October 17, 2001, the Company distributed a letter to SNS employees announcing the upcoming elimination of approximately 200 jobs. Dillon's position was going to be eliminated. In the fall of 2001, Dillon attended a presentation by a Human Resources Manager, who stated that a new medical plan was going to be implemented in 2002, and told Dillon and other employees in attendance that if they stopped work before 2002 (prior to the new plan's implementation), they would be grandfathered under the old or existing medical plan. At this meeting, the Human Resources Manager stated that retiree benefits were lifetime benefits. Dillon cannot recall the name of the person who made this statement.

At about the time the October 17, 2001, letter was distributed, the Company distributed to all employees a brochure entitled "Important News for Everyone! Sprint Retiree Benefits" ("the Brochure"). This Brochure stated that beginning in 2002, Sprint was changing the way it provided financial support for retiree medical coverage and phasing out retiree life insurance. It explained the implementation of Sprint Healthcare Annual Retiree Election ("SHARE") in 2002. This Brochure also included information regarding the differences in retirement occurring in 2001 and 2002 and later years. In addition, the Brochure stated that if an employee's last day of work occurred in 2001, the Company would pay for the employee's retiree medical option the

same way it had in the past, but the retiree's share of the premium remained subject to change each year.  The Brochure included a small print ROR on the last page stating that the Company reserved the right to amend or terminate the Sprint Retiree Benefits Program at any time.

On October 24, 2001, the Company distributed to all management employees who were eligible to retire in 2001, a category that included Dillon, and some bargaining unit employees a one-page letter, with a one-page document, entitled "2002 Retiree Medical Financial Support Comparison" ("the October Letter").  The October Letter compared the current retiree medical funding method and the SHARE account method.  The financial support comparison stated that the Company reserved the right to amend or terminate the Sprint Retiree Benefits Program at any time.

Prior to Dillon's last day of work, he asked for some retirement documentation because he had questions regarding his wife's medical coverage after his death. The HR representative directed Dillon to SPD 5.  Dillon's last day of work was November 9, 2001.  Dillon received fifty-two weeks of severance pay through November 2002.  On January 1, 2003, Dillon began drawing a pension.[8]

In February 2003, Dillon spoke with Benefits Representative Holly Pastor, who informed Dillon that his retiree medical benefits and life insurance benefits were lifetime benefits.  Pastor informed Dillon that his medical benefits would continue until he reached age 65, and then, when he went on Medicare, the company would provide supplemental medical coverage.  Pastor also told Dillon that his retiree life insurance benefit was a lifetime benefit.

---

[8] The parties dispute when Dillon decided to retire based on the timing and sequence of events.  Defendants contend that Dillon made the decision in 2001 because his last day of work was in November 2001.  Plaintiffs contend that Dillon made the decision in 2003 because he began drawing his pension in 2003.

Dillon states that he would have continued working for the Company until sometime after the age of sixty-five had he not been told that his retiree medical and life insurance benefits were lifetime benefits and he could secure those benefits by stopping work in 2001.

*Sue Barnes*

Sue Barnes was employed by CT&T for thirty-six years—between 1959 and 1986, and later between 1994 and her March 31, 2003, retirement date.   Barnes was a member of CWA Local 3672 throughout her time at CT&T after 1967.   The CWA was authorized to, and did, periodically negotiate collective bargaining agreements ("CBAs") on her behalf.   CT&T distributed to union members copies of the new CBAs after they were ratified and printed, typically between six and twelve months after the CBA's effective date.   Barnes had in her possession the 1999 CBA when she decided to retire in early 2003.   The 1999 CBA references the Sprint Retiree Medical Plan and states that employees in the bargaining unit will retain their health care coverage in place at the time of their retirement.   This CBA contains a ROR stating that "[t]he Company expects to continue the Sprint Retiree Medical Plan indefinitely.   However, the Company reserves the right to amend or terminate any one of the various components of the Sprint Retiree Medical Plan at any time including changing the level of Company contributions, deductibles, out of pocket maximums, and requiring retiree contributions, so long as the changes are uniformly applied to all eligible retirees."

CT&T and the CWA negotiated a new CBA that became effective November 30, 2002 ("the 2002 CBA").   The 2002 CBA replaced the 1999 CBA and was in effect when Barnes retired.   This CBA also contains a ROR stating that the company reserves the right to amend or terminate the retiree medical plan.   Barnes did not attend a meeting for CWA members in early 2003 at which the 2002 CBA was explained.

-7-

In January 2003, after hearing from a relative that there would be changes in retirement benefits, Barnes went with a co-worker to speak with Regional Manager Gloria Jones. Jones was authorized to answer employees' questions regarding retirement insurance benefits and changes in the CBAs. Jones told them that she would look into it and get back with them.

Later, Jones met with Barnes and told Barnes that to secure her benefits during retirement, she needed to retire before April 1, 2003. Jones also posted a notice on the board at work that stated, in part, "[y]ou do have to retire by April 1st to retire under current retirement. . . . If on March 31st you say to me you want to cancel your retirement and continue to work, then you continue your employment with Sprint." Barnes states that Jones told her on multiple occasions that Barnes would "secure" or "keep" her medical and life insurance benefits by retiring by April 1.[9] Barnes relied on Jones' statements in making her decision to retire and forego employment. Barnes does not recall any other oral representations from other individuals regarding retiree medical or life insurance benefits.

Barnes submitted a Retirement Letter of Intent on or about February 13, 2003. Benefits Representative Melinda Means then sent Barnes a letter stating that she would be Barnes' "Benefits Representative during your retirement process" and that Barnes should contact Means with any retirement questions. Barnes does not recall asking Means about retiree medical or life insurance benefits.

On March 11, 2003, Means sent Barnes paperwork to complete her retirement. The retirement package contained a document entitled "General Information About Your Retirement From Sprint." One page in the packet showed that Barnes had free medical and prescription

---

[9] The parties disagree over the meaning of the words keep and secure and whether or not these representations meant that the benefits would extend throughout retirement and could not be changed.

drug benefits and $60,000 in grandfathered life insurance.  A checklist enclosed with Means' letter stated: "Be sure to read your Retiree Medical Plan Summary Plan Description before you make your elections for the first year of enrollment."  The retirement package did not contain an SPD.

SPDs 8, 11, and 12 were in effect when Barnes retired. At the time Barnes retired, she had never seen or received a SPD throughout her employment with the company.  Barnes did not know what a SPD was, and she believed that the documents she received in her retirement package were her "Retiree Medical Plan Summary Description."  Barnes states that no company official or union representative ever told Barnes that the Company reserved the right to change or terminate her benefits after she retired.

Barnes would not have retired in 2003 if she had understood that the Company reserved the right to change or terminate her insurance benefits after she retired.  If she had known her retirement insurance benefits were not secure for retirement, she would have continued working.

### III.   Summary Judgment Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[10] The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[11]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[12]  These facts must be clearly identified through affidavits, deposition transcripts,

---

[10]  Fed. R. Civ. P. 56(a).

[11] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[12] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[13]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[14]

## IV.    Analysis

A fiduciary has a duty "to act 'solely in the interest of the participants and beneficiaries' for purposes of providing benefits and administering the plan."[15]   Plaintiffs assert that Defendants breached their fiduciary duty by misrepresenting the terms of the plans by affirmatively telling Plaintiffs, through SPDs, written communications, and oral statements, that their medical and life insurance benefits were lifetime benefits.   Plaintiffs also allege that Defendants failed to inform them that their benefits could change.

To date, the Tenth Circuit has not set forth a definitive test for a breach of fiduciary duty claim based on a misrepresentation under ERISA.[16]  This Court previously set forth a test from the Third Circuit containing the following four elements: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the

---

[13] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[14] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[15] *Horn v. Cendant Operations, Inc.*, 69 F. App'x 421, 427 (10th Cir. 2003) (quoting 29 U.S.C. § 1104(a)(1)(A)).

[16] *See Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 968 (10th Cir. 2011) (noting that the Tenth Circuit had not adopted a test and finding that it need not determine which version of the test to adopt in the case before it).  The Tenth Circuit has still not set forth a definitive test.

misrepresentation."[17]  The parties do not discuss Defendants' status as a fiduciary.  Nevertheless, the Court concludes with respect to this motion that Defendants acted as a fiduciary.

With regard to elements two and three, the Tenth Circuit previously noted that a material misrepresentation is a necessary prerequisite under any version of a breach of fiduciary duty test.[18]  Generally, whether a communication or a statement constitutes an affirmative misrepresentation is a question of fact.[19]  Whether a misrepresentation is material is a mixed question of fact and law.[20]  "Summary judgment on the question of materiality is appropriate only if reasonable minds cannot differ."[21]

"A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed [retirement] decision."[22]  A failure to disclose information may be a material misrepresentation.[23]  "Determining whether a

---

[17] *Fulghum I*, 938 F. Supp. 2d at 1123 (citing *Romero v. Allstate Corp.*, 404 F.3d 212, 226 (3d Cir. 2005)). The parties now dispute whether detrimental reliance is a required element.  The Court will address this contention below.

[18] *See Kerber*, 647 F.3d at 968 (noting breach of fiduciary duty tests in several circuits and declining to adopt a specific test but noting that a material misrepresentation is required under any version).

[19] *See Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993).

[20] *Id.*

[21] *Id.* (internal quotation marks omitted); *see also Horn*, 69 F. App'x at 429 (noting the Third Circuit's *Fischer* opinion that materiality is a mixed question of law and fact and finding that reasonable minds could not differ in the case before it that the defendant made material misrepresentations and omissions to the plaintiff).

[22] *Kerber*, 647 F.3d at 971 (quotation marks and citations omitted); *see also Horn*, 69 F. App'x at 428 ("A fiduciary's misrepresentation or failure to disclose is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed . . . decision.") (internal quotation marks and citation omitted).

[23] *See Horn*, 69 F. App'x at 428; *see also In re Unisys Corp. Retiree Med. Benefits Erisa Litig.* (*Unisys IV*), 579 F.3d 220, 228 (3d Cir. 2009) (noting that a breach of fiduciary duty claim may be premised on either a misrepresentation or an omission and setting forth the test as "(1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure.") (internal quotation marks and citation omitted).

misrepresentation or inadequate disclosure bears a substantial likelihood of misleading a reasonable employee may involve examining whether the fiduciary, as an objective matter, knew or should have known that a beneficiary would be confused by the statement or omission."[24]

In this case, Defendants argue that (1) Plaintiffs cannot demonstrate material misrepresentations, (2) any oral misrepresentations cannot override the written SPDs' unambiguous terms, and (3) Plaintiffs cannot demonstrate reasonable and detrimental reliance or resulting harm.

*Oral Statements*

The Court will first address Defendants' second contention. Defendants contend that Plaintiffs cannot base their breach of fiduciary duty claim on oral statements that are inconsistent with the SPDs' terms. Specifically, they argue that any oral statements indicating that Plaintiffs' retiree benefits could never be terminated or were lifetime benefits cannot form the basis of a misrepresentation claim under ERISA because the written plan documents unambiguously reserved the right to amend or terminate the plan at any time. Thus, Defendants argue that the written plan language governs, and Plaintiffs cannot sustain a misrepresentation claim based on any oral misrepresentations contradicting this plan language.

The Court cannot agree. Defendants, as fiduciaries, have a duty to act in the interest of the beneficiaries and disclose material facts known to the fiduciary but unknown to the beneficiary.[25] As noted by the Sixth Circuit in *James v. Pirelli Armstrong Tire Corp.*,[26] the inclusion of a ROR in plan documents does not

---

[24] *Unisys IV*, 579 F.3d at 228-29 (internal quotation marks and citation omitted).

[25] *Horn*, 69 F. App'x at 427.

[26] 305 F.3d 439 (2002).

necessarily insulate[] an employer from its fiduciary duty to provide complete and accurate information when that employer *on its own initiative* provides inaccurate and misleading information about the future benefits of a plan. . . . Were it otherwise, an employer or plan administrator could provide, on its own initiative, false or inaccurate information about the future benefits of a plan without breaching its fiduciary duty under ERISA, simply because of the existence of a reservation of rights provision in the plan.  However, this would be contrary to the basic concept of a fiduciary duty, which entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.[27]

In addition, the Third Circuit decided a case with similar facts to this case.  In *In re Unisys Corp. Retiree Medical Benefits Litigation (Unisys II)*,[28] the Third Circuit allowed the plaintiffs' breach of fiduciary duty claim to proceed, despite finding that the contractual language unambiguously allowed the defendant to modify or terminate the plan at any time.[29] The Third Circuit noted that the facts demonstrated that company management had consistently misrepresented the plan (that medical benefits would continue for life) over a period of years on more than one occasion and to more than one employee.[30]  The Third Circuit stated that its policy against informal plan amendments still remained, but under the circumstances, allowing a breach of fiduciary duty claim did not conflict with that policy.[31]

---

[27] *Id.* at 454-55 (internal quotation marks and citation omitted).

[28] 57 F.3d 1255 (3d Cir. 1995).

[29] *Id.* at 1265.

[30] *Id.*

[31] *Id.*; *see also Pirelli.*, 305 F.3d at 455 (finding that a "reservation of rights provision did not protect an employer from liability for a breach of fiduciary duty when the employer deliberately fostered the belief that retirement benefits are lifetime benefits . . . .") (citations omitted).  *But see Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 641 (7th Cir. 2004) (finding that the failure to provide an explicit oral warning that "lifetime" welfare benefits were terminable when the plan documents contained a ROR did not support a breach of fiduciary duty claim).

Furthermore, in the Tenth Circuit's unpublished opinion, *Horn v. Cendant Operations*,[32] the circuit found that a breach of fiduciary duty occurred when the defendant failed to provide material information to the plaintiff at the relevant time.[33]   The Tenth Circuit noted that plan language typically controls but found that the defendant had failed to make the written information available to the plaintiff.[34]   The circuit also noted that the defendant's failure to disclose material information went beyond the initial failure to provide written information and continued when the defendant spoke to the plaintiff approximately twenty to fifty times about her benefits.[35]   The Court recognizes that the facts in *Horn* are somewhat distinguishable from the facts in this case, but the Tenth Circuit's decision in *Horn* appears to demonstrate that the Tenth Circuit would recognize a breach of fiduciary duty claim based in part on oral representations.

There are several Tenth Circuit decisions addressing equitable or promissory estoppel principles under ERISA.[36]   Defendants rely upon these cases for the proposition that the Tenth Circuit would not recognize a breach of fiduciary duty claim if it is based on oral misrepresentations that modify the plan's language because the Tenth Circuit does not recognize

---

[32] 69 F. App'x 421.

[33] *Id.* at 428.  In *Horn*, the plaintiff brought the claim pursuant to 29 U.S.C. § 1104(a)(1).

[34] *Id.*

[35] *Id.*

[36] *See Averhart v. U.S. W. Mgmt. Pension Plan*, 46 F.3d 1480 (10th Cir. 1994); *Miller v. Coastal Corp.*, 978 F.2d 622 (10th Cir. 1992); *Straub v. W. Union Tel.*, 851 F.2d 1262 (10th Cir. 1988).  These decisions generally state that an estoppel cause of action does not exist under ERISA if it is based upon informal written or oral modifications of a written ERISA plan. The Court notes that although the Tenth Circuit has discussed estoppel principles in several cases, the Tenth Circuit has never officially recognized an equitable estoppel claim under ERISA.  *See Kerber*, 647 F.3d at 962.

-14-

ERISA estoppel claims based on oral misrepresentations modifying plan language. The Court finds these cases inapplicable to this case.[37]

First and foremost, in this case, Plaintiffs bring a breach of fiduciary duty claim pursuant to § 1132(a)(3).[38] The plaintiffs in these estoppel cases did not bring a breach of fiduciary duty claim pursuant to § 1132(a)(3). Instead, they brought their claims under either a state law theory or pursuant to § 1132(a)(1)(B).[39] Specifically, in *Averheart* and *Miller*, the plaintiffs brought their claims under § 1132(a)(1)(B). This distinction is important because a § 1132(a)(1)(B) claim is an action brought "to recover benefits due to [plaintiff] under the terms of his plan, to enforce [plaintiff's] rights under the terms of the plan, or to clarify [plaintiff's] rights to future benefits under the terms of the plan" which is in contrast to a § 1132(a)(3) claim brought to "obtain other appropriate equitable relief." A § 1132(a)(1)(B) claim is brought against the plan and seeks relief from the plan while a § 1132(a)(3) claim is brought against the fiduciary of the plan and seeks equitable relief from the fiduciary, which does not necessarily include modification of the written plan language. As the Third Circuit noted in *Unisys II*, the elements

---

[37] Defendants also rely on the Second Circuit's opinion, *Ladouceur v. Credit Lyonnais*, 584 F.3d 510 (2d Cir. 2009), for the proposition that a breach of fiduciary duty claim cannot be premised on oral statements that contradict unambiguous written plan language. In *Ladouceur*, the Second Circuit found that "a party alleging a breach of fiduciary duty on the basis of a statement purporting to alter the terms of an ERISA benefit plan must point to a written document containing the alleged statement." *Id.* at 513. The Second Circuit also stated that "[o]ral promises are unenforceable under ERISA and cannot vary the terms of an ERISA plan." *Id.* at 512. However, the Second Circuit also stated that it was not imposing a categorical requirement that an ERISA breach of fiduciary duty claim required a writing. *Id.* at 513. This Court is not bound by the Second Circuit's holding, and as will be noted below, Plaintiffs' claim does not necessarily alter the written plan language.

[38] Specifically, Plaintiffs bring their breach of fiduciary duty claim pursuant to 29 U.S.C. § 1104(a) and 29 U.S.C. § 1132(a)(3). Their claim arises under § 1104(a) and they seek relief under § 1132(a)(3).

[39] *Averhart*, 46 F.3d at 1483 (asserting a claim under § 1132(a)(1)(B)); *Miller*, 978 F.2d at 624 (asserting an action under § 1132(a)(1)(B)); *Straub*, 851 F.2d at 1263 (bringing a state law claim for negligent misrepresentation and trying to re-categorize that claim as one under ERISA).

of a breach of a fiduciary duty claim brought under § 1132(a)(3)(B) are distinct from the elements of a contractual vesting claim brought under § 1132(a)(1)(B).[40]

Furthermore, Plaintiffs do not necessarily seek modification of the plan language. Instead, their breach of fiduciary duty theory seeks to hold Defendants (a fiduciary) liable for alleged misrepresentations. 29 U.S.C. § 1132(a)(3)(B) specifically provides that a beneficiary may bring suit "to obtain other appropriate equitable relief." Thus, the relief does not come from the plan or modification of the plan.

Given that the Tenth Circuit has allowed breach of fiduciary duty claims to proceed under § 1132(a)(3)(B) and has allowed a breach of fiduciary duty claim based in part on an oral misrepresentation, the Court concludes that the Tenth Circuit would allow a breach of fiduciary duty claim based on the alleged oral misrepresentations in this case. In particular, the Tenth Circuit's statement that the defendant "had an affirmative duty to provide complete and accurate [] information . . . that [the defendant] knew or should have known as a fiduciary which was material to [the plaintiff's circumstances]" is instructive.[41] Defendants had an affirmative duty to provide complete information regarding Plaintiffs' retiree benefits based on information they knew or should have known. Thus, the Court finds that the ROR clauses in the SPDs do not necessarily shield Defendants from breach of fiduciary duty liability if they made oral material

---

[40] *Unisys II*, 57 F.3d at 1265 and n.14 (stating that a breach of fiduciary duty claim is "distinct from a claim for benefits under the terms of the plan because it requires different proof (proof of fiduciary status, misrepresentations, company knowledge of the confusion and resulting harm to the employees) than would be required for a contract claim that the plans had been modified."). This distinction would also appear applicable to an estoppel claim brought under § 1132(a)(1)(B) because in an estoppel claim, the plaintiffs look to the language of the plan and seek to estop the plan language from being enforced.

[41] *Horn*, 69 F. App'x at 428.

misrepresentations.[42]   Accordingly, the Court finds that Plaintiffs can rely upon oral misrepresentations.

*Material Misrepresentations*

As to Defendants' contention that Plaintiffs cannot demonstrate material misrepresentations, the Court finds that genuine issues of material fact preclude a finding in Defendants' favor.   There appear to be questions of fact as to the content of the actual oral statements.   Thus, whether Defendants made misrepresentations is a disputed fact.

In addition, there are questions of fact as to the materiality of those statements.   With regard to materiality, the Third Circuit noted in *Unisys IV* that determining whether a misrepresentation is materially misleading may require considering what the fiduciary knew or should have known regarding whether the beneficiary would be confused by the information.[43] Here, there appear to be issues of fact regarding Defendants' knowledge.   In addition, the Tenth Circuit noted in *Kerber* that a misrepresentation could not be materially misleading if the statement was made after the plaintiff made the decision to retire because the statement could not guide the plaintiff's retirement decision.[44]   Here, the parties dispute the timing of certain statements made to Dillon and whether they could have guided his retirement decision.   Thus, there are questions of fact as to the materiality of Defendants' oral statements.

---

[42] Whether or not Defendants actually gave oral material misrepresentations is disputed as will be discussed below.   The Court notes, however, that the SPD's ROR is a relevant consideration when determining whether Defendant made material misrepresentations and whether Plaintiffs' reliance on Defendants' oral statements is reasonable.

[43] *Unisys IV*, 579 F.3d at 228-29; *see also Horn*, 69 F. App'x at 428 (noting that the defendant had an affirmative duty to provide complete information that it knew or should have known as a fiduciary).

[44] *Kerber*, 647 F.3d at 971.

The Court notes, however, that Plaintiffs cannot rely upon written misrepresentations. Plaintiff Dillon continues to assert that SPD 5, the SPD applicable to him, contains actionable misrepresentations.  He also asserts that other documents, including memoranda and company newsletters, informed him of lifetime benefits. Plaintiff Barnes does not direct the Court to any written misrepresentations applicable to her.  Thus, the Court will only address the written documents that Dillon relies upon.

With regard to the informal documents, Plaintiffs have not produced or identified any of these alleged documents.  Plaintiff Dillon therefore cannot rely upon these documents.  As to the SPDs, Plaintiff Dillon also cannot rely on the written SPD as a misrepresentation source.   This Court, and the Tenth Circuit, previously found that the relevant SPDs unambiguously allowed Defendants to terminate the welfare benefits.[45]  Because these SPDs unambiguously allow for termination of benefits, they cannot be the basis for a material misrepresentation.[46]

### Detrimental or Reasonable Reliance or Harm

Finally, Defendants argue that Plaintiffs cannot demonstrate detrimental or reasonable reliance or harm even if Defendants made material misrepresentations.  Plaintiffs contend that detrimental reliance is no longer an element of a breach of fiduciary duty claim based on the United States Supreme Court decision in *CIGNA Corp. v. Amara*.[47]  Plaintiffs also assert that

---

[45] *Fulghum II*, 785 F.3d at 404-09.

[46] *See Kerber*, 647 F.3d at 969 (finding that the written insurance plan description contained a ROR and thus the written document could "not constitute a material misrepresentation and cannot form the basis for Plaintiffs' breach of fiduciary duty claim.").

[47] 563 U.S. 421 (2011).

there is evidence that they detrimentally relied upon the statements because they gave up their jobs and retired earlier than they would have otherwise.[48]

Although the Court previously set forth the law of this case, the Court need not decide whether detrimental reliance remains an element of a breach of fiduciary duty claim.  If it is indeed an element, Defendants fails to demonstrate that there are no questions of fact regarding Plaintiff's detrimental reliance. Accordingly, Defendants are not entitled to summary judgment on this element. And even if detrimental reliance is not a specific, separate element, the materiality element of a breach of fiduciary duty claim includes reasonable reliance. Specifically, a misrepresentation is material "if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed [retirement] decision."[49] Thus, the Court concludes that Plaintiffs will have to show reasonable reliance to sustain a breach of fiduciary duty claim.[50]   However, there are questions of fact precluding summary judgment as to whether Plaintiffs reasonably relied on Defendants' representations.

In sum, the Court denies Defendants' Motion for Summary Judgment because genuine issues of material fact exist.

---

[48] Defendants argue that Plaintiffs cannot demonstrate harm because had Plaintiffs retired at a later date, the subsequent SPDs contained RORs allowing Defendant the right to terminate benefits at any time and nothing Plaintiffs could have done would have entitled them to vested retiree benefits.  If, however, Plaintiffs can indeed show that they retired based on the misrepresentation that they would receive lifetime medical and life insurance benefits, the fact that a later retirement date may not have included those benefits is irrelevant.  The harm would be that Plaintiffs' retiree benefits were taken away after they made their retirement decision.

[49] *Kerber*, 647 F.3d at 971 (internal quotation marks and citation omitted).

[50] The Court notes that the SPDs' ROR is a relevant consideration when determining whether Defendant made material misrepresentations and whether Plaintiffs' reliance on Defendants' oral statements is reasonable.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment on Breach of Fiduciary Duty Claims of Plaintiffs Dillon and Barnes (Doc. 553) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 15th day of March, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE